PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

Roy T. Lefkoe, on behalf of
himself and all others similarly
situated; The Haverhill
Retirement System; Lefkoe /
Yannuzzi; Ceferino Fajardo;
Massachusetts Laborers'
Annuity Fund,

$\qquad$ *Plaintiffs,*

v.

Jos. A. Bank Clothiers,
Incorporated; Robert N.
Wildrick; R. Neal Black; David
E. Ullman,

$\qquad$ *Defendants-Appellees,*

v.

The Doe Client,

$\qquad$ *Movant-Appellant.*

No. 08-2059

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, Senior District Judge.
(1:06-cv-01892-WMN)

Argued: May 15, 2009

Decided: August 13, 2009

Before Sandra Day O'CONNOR, Associate Justice
(Retired), Supreme Court of the United States, sitting by
designation, and NIEMEYER and GREGORY,
Circuit Judges.

---

Affirmed by published opinion. Judge Niemeyer wrote the
opinion, in which Associate Justice O'Connor and Judge
Gregory joined.

---

## COUNSEL

**ARGUED:** Russell Beck, FOLEY & LARDNER, LLP, Boston, Massachusetts, for Appellant. Michael Broughton Mac-Williams, VENABLE, LLP, Baltimore, Maryland, for Appellees. **ON BRIEF:** Marie Scheibert, FOLEY & LARDNER, LLP, Boston, Massachusetts, Michael J. Lockerby, FOLEY & LARDNER, LLP, Washington, D.C., for Appellant. James L. Shea, VENABLE, LLP, Baltimore, Maryland, James A. Dunbar, Heather L. Mitchell, VENABLE, LLP, Towson, Maryland, for Appellees.

---

## OPINION

NIEMEYER, Circuit Judge:

In the deposition of a law firm representing an unidentified nonparty witness noticed in this securities fraud class action and taken in the District of Massachusetts pursuant to a subpoena that issued there, the nonparty witness asserted a right to anonymity under the First Amendment. The Massachusetts district court, having authority over the subpoena, denied the law firm's motion to quash the subpoena and ordered the law firm to reveal the nonparty witness' identity. But the court

also entered a protective order prohibiting the lawyers for the parties from disclosing the identity of the nonparty witness to anyone else, including the parties. Finally, the court stated that its protective order was subject to modification by the Maryland district court, where the action is pending.

By order dated September 3, 2008, the Maryland district court modified the protective order to allow disclosure of the nonparty witness' identity to the attorneys' clients but to no one else.

From the Maryland district court's order, the nonparty witness filed this interlocutory appeal, contending (1) that the Maryland district court had no authority to modify the Massachusetts district court's protective order and (2) that the Maryland district court's modification nonetheless violates the nonparty witness' First Amendment right to remain anonymous. For the reasons that follow, we reject both arguments and affirm.

I

In the pending securities fraud litigation, the plaintiffs on behalf of themselves and a purported class of persons who purchased stock of Jos. A. Bank Clothiers, Inc. during the period from December 5, 2005, to June 7, 2006, claim that Jos. A. Bank and insiders issued a series of false and misleading statements about the company's earnings, profits, and inventory and thereby allowed the insiders to profit from inflated stock prices. The plaintiffs allege that when the true facts were disclosed in June 2006, the price of Jos. A. Bank stock fell 29%, causing the plaintiffs "tens of millions of dollars of investor losses."

During the period defining the class, Jos. A. Bank received a letter dated March 15, 2006, from the law firm of Foley & Lardner LLP in Boston, Massachusetts, who represented a client whom it did not identify (referred to herein as "the Doe

Client"). The letter, addressed to Jos. A. Bank's Audit Committee, stated:

> Foley & Lardner LLP represents a shareholder of Jos. A. Bank Clothiers, Inc. (the "Company") who has held several hundred thousand shares of the Company for some time. Our client is concerned about the Company's public communications and financial reporting with respect to its inventory.

The letter proceeded to detail multiple allegations regarding the handling, accounting, and reporting of inventory. Some allegations suggested specific, nonpublic knowledge. But other allegations were generalized, such as claims that the public "assertions by management that [Jos. A. Bank's] inventory levels [were] necessary, appropriate or advantageous [were] not credible and defy common business sense." The letter concluded:

> This communication is a formal report on behalf of our client to the Company's Audit Committee regarding the integrity of the Company's financial statements and the Company's compliance with ethics policies and legal and regulatory requirements. Our client requests that this letter be shared with the Company's auditors, Deloitte & Touche LLP. Please advise us promptly as to what steps the Company's Board, Audit Committee and/or auditors are taking in response to this letter.

The Audit Committee received the letter roughly two weeks before Jos. A. Bank was scheduled to release its earnings report and hold its earnings call. To investigate the letter's claims, the Audit Committee hired the law firm of Wilmer, Cutler, Pickering, Hale & Dorr LLP and the accounting firm of Ernst & Young LLP. This investigation, which was substantially completed by Friday, March 31, 2006, at a cost of approximately $600,000, concluded that the allega-

tions were "without substance." The investigation, however, caused Jos. A. Bank to delay its earnings report and call by 10 days, to April 13, 2006. On the next trading day after Jos. A. Bank announced the delay in reporting its earnings, the price of its stock dropped 5.8%.

Several months later, the plaintiffs commenced this action in the District of Maryland, filing it on July 24, 2006.

In this litigation, Jos. A. Bank served a notice to depose the Foley & Lardner law firm in Massachusetts to obtain the identity of and information about the Doe Client, suspecting that the Doe Client could provide information relevant to the pending action, particularly relating to the causation of losses claimed by the plaintiffs and the bases for defining the class. To compel Foley & Lardner to attend the deposition and reveal the identity of and other information about the Doe Client, Jos. A. Bank caused a subpoena to be issued from the district court in the District of Massachusetts pursuant to Federal Rule of Civil Procedure 45.

Foley & Lardner filed a motion in the Massachusetts district court to quash the subpoena, arguing that it "is punitive, seeks irrelevant information, and violates Foley's client's right of anonymity as protected by the First [A]mendment and federal common law." The district court, however, allowing for the possibility that the Doe Client might be complicit with the plaintiffs and that its letter was "part of a cabal . . . to affect [the] stock price [of Jos. A. Bank] and then [to] sue," denied the motion to quash and allowed a two-hour deposition to be taken directly under its supervision. The court also ordered that the deposition be sealed and directed counsel not to disclose the identity of the Doe Client to anyone "absent an order of the judge presiding in the lawsuit." In response to the district court's sealing order, Foley & Lardner on behalf of the Doe Client then took the following position with respect to the Doe Client's First Amendment rights, which the court rejected:

| | |
|---|---|
| Counsel for Doe Client: | Your Honor, I appreciate the effort to narrow this, but it doesn't obviate the threshold issue from their standpoint which is that they are looking for *complete anonymity* here. |
| The Court: | Well, they may be, but *they have no legal right to complete anonymity*. |
| Counsel for Doe Client: | Under the First Amendment cases that we've identified —I understand Your Honor's — |
| The Court: | I'm not creating, I'm not creating some new privilege here. I'm sorry. That's intriguing. This was, this was very interesting. But we're not going there. |

(Emphasis added).

The deposition took place *in camera*, and Foley & Lardner, instead of designating a representative of the firm as required by the notice of deposition and Federal Rule of Civil Procedure 30(b)(6), produced the Doe Client itself.* At the conclusion of the deposition, the court summarized its order:

---

*The production of the Doe Client may have been voluntary. When the court directed that Foley & Lardner "get the 30(b)(6) person here," Foley

The deposition as I've earlier ordered will be entirely sealed without prejudice to application being made to the presiding judge [in Maryland] for whatever treatment, and that also means application made to the presiding judge to call for additional depositions or expand the scope of this deposition; I express no opinion on that.

I have a small piece of this dispute, and I've tried to balance the interests of the entity that wished to remain anonymous against the justified interests under Rule 45 of Jos. A. Bank of obtaining discovery.

My ruling is based upon what seems to me the appropriate limits of discovery, not any privilege as I said when we were in open court. But I am willing that the presiding judge who has the lawsuit under his care make the final call as to all of these matters and Foley may find itself before that . . . presiding judge, defending or seeking to modify the limits that I've put on it.

When counsel for Jos. A. Bank requested that he be allowed to disclose the identity of the Doe Client to his client, the Massachusetts district court instructed that counsel had to keep the Doe Client's identity to himself and his partners. It directed counsel, however, to "go to the presiding judge [in Maryland] and say, this was far too limited, open it up. . . . And that judge, I'm sure, will give notice to Foley, and Foley can be heard. . . . This is a sealed proceeding; sealed, unless

& Lardner responded that "the client is not located in the state," to which the court observed, "Well, planes fly. Do you want Monday rather than tomorrow?" On Monday, June 2, 2008, the Doe Client was produced and its deposition taken. And during the deposition, it revealed its identity, after again asserting a right to anonymity and after the court overruled the objection.

the presiding judge should otherwise order." But the court allowed that Jos. A. Bank's counsel could "go out and investigate" the Doe Client, but could not reveal its identity to in-house counsel or anyone else, except with permission of the Maryland district court.

Jos. A. Bank's outside counsel accordingly sought out all publicly available information on the Doe Client and uncovered several facts suggesting to counsel that the Doe Client "took deliberate and successful actions [*e.g.*, sending the letter to the Audit Committee] to drive down the market price of [Jos. A. Bank's] stock during the proposed class period." Most importantly, Jos. A. Bank's outside counsel learned that the Doe Client was a known "short seller" and that it, in addition to holding several hundred thousand shares of Jos. A. Bank stock, also held several times that quantity of puts on Jos. A. Bank stock, giving the Doe Client the option of selling Jos. A. Bank stock at an agreed-upon price and thus potentially allowing the Doe Client to profit from the stock price's fall.

With this information in hand, Jos. A. Bank's outside counsel filed a motion in the Maryland district court to unseal the deposition of the Doe Client and permit further discovery from the Doe Client. Jos. A. Bank asserted that the discovery from the Doe Client would be relevant to its various defenses, including discovering whether the Doe Client manipulated the price of the stock, "a fact that goes to both substantive liability and damages," and which may have "spawned inefficiencies in the market for the Company's stock—a fact that strongly militates against certification of the proposed class." Jos. A. Bank also expressed a wish to "file any appropriate lawsuits" against the Doe Client.

Despite the Doe Client's opposition to Jos. A. Bank's motion, the Maryland district court modified the protective order by making the Doe Client's identity "accessible to parties to this litigation." The order allowed Jos. A. Bank's out-

side counsel to reveal the Doe Client's identity to in-house counsel and to pursue further discovery against the Doe Client. But the district court continued the Massachusetts district court's protective order insofar as it prohibited disclosure to the public.

From the district court's order, dated September 3, 2008, the Doe Client filed this interlocutory appeal, invoking the collateral order doctrine. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949); *United States v. Moussaoui*, 483 F.3d 220, 227-28 (4th Cir. 2007). And pending our decision on appeal, the district court stayed its order.

## II

The Doe Client contends first that the Maryland district court lacked statutory authority to unseal, even partially, the deposition that the Massachusetts court had ordered sealed, even though the Massachusetts court expressly contemplated that the Maryland court could determine to unseal the deposition. The Doe Client argues:

> By reversing a final order of the Massachusetts District Court—from which Jos. A. Bank and the Insider Defendants never appealed to the First Circuit—the Maryland District Court usurped the prerogatives of the Massachusetts District Court and the First Circuit alike. To the extent that the Maryland District Court had any authority to review the ruling of the Massachusetts District Court, its review was subject to the law of the case doctrine.

The Doe Client's arguments are far too rigid for the legal scheme created by the Federal Rules of Civil Procedure for obtaining discovery in federal cases, and they are especially strained in light of the fact that the two courts involved appropriately divided authority with respect to the deposition and neither overstepped that division of authority. The Massachu-

setts court acted within the authority granted it by the Federal Rules of Civil Procedure, and it did not enter any order intending to control the authority of the Maryland district court to manage discovery and the litigation. Likewise, the Maryland district court acted within the authority granted it by the Rules, and it did not overrule any order entered by the Massachusetts court.

Stated generally, the deposition noticed in the Maryland case was taken in Massachusetts and supervised by the Massachusetts district court for use in the Maryland case, and the two courts recognized their roles in the process. Indeed, the Massachusetts court was especially sensitive to not interfere with the Maryland court's role in managing discovery and the litigation.

More particularly, the Massachusetts court ruled that the Doe Client could not maintain complete anonymity under the First Amendment but that disclosure of its identity would be limited to enable the Maryland district court to make "the final call." And the court repeated this message: "The deposition as I've earlier ordered will be entirely sealed without prejudice to application being made to the presiding judge [in Maryland] for whatever treatment," and "I am willing that the presiding judge who has the lawsuit under his care make the final call as to all of these matters and [the Doe Client] may find itself before that . . . presiding judge, defending or seeking to modify the limits that I've put on it." When counsel for Jos. A. Bank expressed his desire to disclose the identity of the Doe Client to his client, the Massachusetts district judge stated that counsel should "go to the presiding judge [in Maryland] and say, this was far too limited, open it up. . . . And that judge, I'm sure, will give notice to [the Doe Client] and [the Doe Client] can be heard." In giving these instructions, the Massachusetts court defined its role: "I have a small piece of this dispute, and I've tried to balance the interests of the [Doe Client] that wished to remain anonymous against the justified interests under Rule 45 of Jos. A. Bank of obtaining

discovery." And the court indicated that it was deferring to the presiding judge to "make the final call."

It is apparent that both the Massachusetts court and the Maryland court recognized the division of authority anticipated by the Federal Rules of Civil Procedure.

Under the Rules, the deposition of a nonparty witness is noticed in the pending action, with notice served on all parties. *See* Fed. R. Civ. P. 30(b)(1). As Rule 30(a) provides, "A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2). The deponent's attendance may be compelled by subpoena under Rule 45." Fed. R. Civ. P. 30(a)(1). Because the deponent in this case was a nonparty witness, Jos. A. Bank caused the issuance of a subpoena, as authorized by Rule 30(a) and pursuant to Rule 45, to compel the attendance of the witness. And because the deponent was located in Massachusetts, Jos. A. Bank caused the subpoena to be issued from the district court there. Accordingly, the Massachusetts district court had authority to enforce, modify, or quash the subpoena in accordance with Rule 45(c).

But under this scheme, the deponent could *also* have sought protection from the Maryland district court under the authority given by Rule 26(c). That rule provides:

> A party or any person from whom discovery is sought may move for a protective order [1] *in the court where the action is pending—or* as an alternative on matters relating to a deposition, [2] *in the court for the district where the deposition will be taken*.

Fed. R. Civ. P. 26(c)(1) (emphasis added). The Maryland district court is also given authority to regulate depositions under Rules 30(d) and 37. Of course, *use* of the deposition in the lit-

igation is controlled by the Maryland court, where the action is pending. *See* Fed. R. Civ. P. 32(a).

Thus, a nonparty witness whose deposition is noticed for a location other than in the district where the case is pending has a range of options in seeking protection.

Even though Rule 26(c) authorized the Doe Client to seek protection from either the Maryland court, where the case is pending, or the Massachusetts court, where the deposition was being taken, it could also invoke Rule 45(c) to obtain protection specifically from the Massachusetts court where the subpoena issued. These multiple accommodations to the deponent, however, do not create an antagonistic jurisdictional division of authority. To the contrary, they afford flexibility so that the nonparty witness can facilely obtain protection and not be unduly burdened.

In this case, when the Doe Client filed its motion to quash the deposition subpoena and demanded complete anonymity under the First Amendment, the Massachusetts district court denied the motion, stating that the deponent has "no legal right to complete anonymity." The district court explained, "I'm not creating some new privilege here. I'm sorry. That's intriguing. This was, this was very interesting. But we're not going there." The court nonetheless entered a protective order prohibiting disclosure of the Doe Client's identity except to the lawyers for the parties and subject to review and modification by the Maryland district court. The protective order, therefore, not only prohibited the attorneys from disclosing the identity of the deponent to anyone, but also, by its terms, allowed the Maryland district court to modify it.

The Maryland district court, which had ultimate supervisory authority over the litigation, including discovery and its use in the litigation, modified the protective order, allowing the attorneys for the parties to disclose the Doe Client's identity, but only to their clients. It did so after concluding that

Jos. A. Bank has made an adequate showing that this information is relevant to its opposition to class certification as well as to certain defenses it might raise to Plaintiff's claims.

\* \* \*

[The Doe Client's] desire to keep this information private simply does not rise to the level of good cause necessary to maintain it under seal from the parties to this litigation and doing so interferes with Jos. A. Bank's counsel's ability to represent its client.

The court added, however, that it was maintaining a protective order with respect to disclosure of the Doe Client's identity to the public.

When the Maryland district court expanded disclosure of the Doe Client's identity to the parties to this litigation, it did not overstep its authority under the Federal Rules of Civil Procedure, nor did it overstep anything in the Massachusetts court's protective order. Accordingly, we reject the Doe Client's argument that the district court acted without authority.

III

The Doe Client also contends that the Maryland district court violated its "fundamental First Amendment right to speak anonymously" when it relaxed the protective order to permit disclosure of the Doe Client's identity to the parties in the litigation. The Doe Client argues that its choice to send the March 15, 2006 letter to the Audit Committee of Jos. A. Bank anonymously was protected by the First Amendment and that the Maryland district court violated its rights by expanding the scope of disclosure.

At the outset, we observe that the Doe Client asserted its claim to complete anonymity under the First Amendment in

the District of Massachusetts, and the Massachusetts court rejected the argument, ordering the Doe Client to disclose its identity in the deposition—albeit subject to a protective order. Despite the Doe Client's argument that even ordering disclosure to the attorneys violated its right of complete anonymity, the Doe Client did not persist on its claim and appeal to the First Circuit. By failing to appeal the order of the Massachusetts district court, the Doe Client has waived further review of the issue whether *partial disclosure* of its identity—*i.e.* disclosure to the attorneys on this case—compromised its claimed right to complete anonymity, and we are not authorized to review that ruling of the Massachusetts district court. *See* 28 U.S.C. § 1294(1); *Moussaoui*, 483 F.3d at 232.

The Doe Client presents us with a similar issue, arguing that the Maryland district court violated its First Amendment rights by modifying the protective order and allowing the further disclosure of its identity to the parties in this case. This rests on the premise that a First Amendment right to speak anonymously may also be violated by the district court's allowance of the *further disclosure* to the attorneys' clients. Rather than evaluate this premise, however, we assume for our discussion that the district court's modification of the protective order to allow disclosure to a broader class of persons can amount to an additional violation of the Doe Client's claimed right to speak anonymously.

The First Amendment does appear to include some aspect of anonymity in protecting free speech. The quintessential example is provided by the anonymous speech of the Federalist Papers, published by James Madison, Alexander Hamilton, and John Jay under the pseudonym "Publius." *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-43, 343 n.6 (1995); *id.* at 342 ("[A]n author's decision to remain anonymous . . . is an aspect of the freedom of speech protected by the First Amendment"). The right to anonymous speech, however, is not unlimited. *See, e.g.*, *McConnell v. FEC*, 540 U.S. 93, 230-31 (2003); Lyrissa Barnett Lidsky & Thomas F. Cot-

ter, *Authorship, Audiences, and Anonymous Speech*, 82 Notre Dame L. Rev. 1537, 1599-1600 (2007) ("[R]ight" to anonymous speech is better termed a "qualified privilege"). Courts have typically protected anonymity under the First Amendment when claimed in connection with literary, religious, or political speech. *See McIntyre*, 514 U.S. at 342-43; *see also Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Village of Stratton*, 536 U.S. 150, 166-67 (2002); *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 197-204 (1999); *Green v. City of Raleigh*, 523 F.3d 293, 301-02 (4th Cir. 2008).

While Jos. A. Bank does not dispute some qualified right to anonymity in the context of political or literary speech, it contends that the Doe Client's letter enjoys less First Amendment protection inasmuch as it is commercial speech. We agree. The March 15, 2006 letter demanded that the Audit Committee take action of a commercial nature—"Our client requests that this letter be shared with the Company's auditors, Deloitte & Touche LLP. Please advise us promptly as to what steps the Company's Board, Audit Committee and/or auditors are taking in response to this letter." *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-68 (1983); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 761-65 (1976). The letter was an "expression related solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980); *El Dia, Inc. v. Puerto Rico Dep't of Consumer Affairs*, 413 F.3d 110, 115 (1st Cir. 2005).

Because the Doe Client's letter was commercial speech, any First Amendment right to speak anonymously "enjoys a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, and is subject to modes of regulation that might be impermissible in the realm of noncommercial expression." *Bd. of Trustees of SUNY v. Fox*, 492 U.S. 469, 477 (1989) (internal quotation

marks, citation, and alterations omitted); *see also W. Va. Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 301 (4th Cir. 2009). We thus conclude that the Doe Client's claimed First Amendment right to anonymity is subject to a substantial governmental interest in disclosure so long as disclosure advances that interest and goes no further than reasonably necessary. *See Central Hudson*, 447 U.S. at 566; *see also Fox*, 492 U.S. at 477, 480; *accord United States v. Edge Broadcasting Co.*, 509 U.S. 418, 427-28 (1993).

In this case, Jos. A. Bank, named as a defendant in a class action, claims that discovery of the Doe Client and information from it relate to the litigation and are necessary to defend itself. It contends that "[t]he available evidence strongly indicates that the [Doe] Client took deliberate and successful actions to drive down the market price of the Company's stock during the proposed class period," providing a basis for it to contest class certification and damages. Moreover, the Maryland district court agreed that the limited further disclosure of the Doe Client's identity and discovery was appropriate. The court stated that it was "persuaded that Jos. A. Bank has made an adequate showing that this information is relevant to its opposition to class certification as well as to certain defenses it might raise to Plaintiff's claims." It explained that Jos. A. Bank learned that the Doe Client is a known short seller and that short selling during the class period, as opposed to Jos. A. Bank's fraud or malfeasance, may have been a cause of the drop in the price of Jos. A. Bank stock. As the court stated, "[Jos. A. Bank] also persuasively argues that the presence of a high volume of short selling of Company stock is relevant to its opposition to class certification in that it could support Jos. A. Bank's argument that there was not an efficient market for the Company stock during the class period."

Once it is recognized that the deposition of the Doe Client and information that it could present could be relevant and useful to Jos. A. Bank's defense of the litigation, the substan-

tial governmental interest in providing Jos. A. Bank a fair opportunity to defend itself in court is served by requiring the Doe Client to reveal its identity and provide the relevant information. Rule 26 explicitly expresses this interest, providing that Jos. A. Bank "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1).

In the circumstances, we conclude that the Maryland district court's order of September 3, 2008, modifying the protective order entered by the Massachusetts district court, does not unduly infringe upon any right that the Doe Client may otherwise have to anonymity.

Accordingly, the order of the district court is

*AFFIRMED*.