## Morris Bellis

V.

## Commonwealth of Virginia

Record No. 900832

March 1, 1991

Present: All the Justices

*Jeffery A. Sturgill (Sturgill, Sturgill & Stewart*, on briefs), for appellant.

*Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General*, on brief), for appellee.

JUSTICE RUSSELL delivered the opinion of the Court.

A physician was punished for contempt of court for failure to obey a subpoena duces tecum. His appeal questions the effectiveness of the service of the subpoena.

A felony case, *Commonwealth* v. *Jeffery Allen Noaks*, was set for trial on Monday, August 15, 1988, in the Circuit Court of Wise County. The commonwealth's attorney caused a subpoena duces tecum to issue, commanding Dr. Morris Bellis to attend the trial on August 15 and to produce certain medical records pertaining to a medical examination of the victim of a malicious wounding and an attempted rape.

The sheriff received the subpoena from the clerk on August 9. The sheriff's return reads "Subpoena 8-10-88 Delivered to person found in charge of usual place of business or employment during business hours and giving information of its purport. Pat Bevins — Sect Dr. Bellis." Dr. Bellis failed to appear at the *Noaks* trial on August 15 and the court issued a summons requiring him to appear on the following day to show cause why he should not be held in contempt. That summons was personally served.

Dr. Bellis appeared without counsel on August 16. The court heard evidence, held him in contempt, and imposed a $100 fine.

Later, counsel appeared for Dr. Bellis and filed a motion to reconsider. By order of September 2, 1988, the court vacated the contempt order and set the case for hearing on October 17. On that date the court heard further evidence and took the matter under consideration. On January 17, 1989, the court issued a letter opinion and entered an order reinstating the finding of contempt and reimposing the fine. The Court of Appeals refused an appeal on April 26, 1990, holding that the evidence was sufficient to support the trial court's finding. We awarded Dr. Bellis an appeal.

At the October 17 hearing, Pat Bevins, secretary and receptionist in Dr. Bellis' office, testified that the sheriff delivered the subpoena to her between 11:00 a.m. and 12:00 noon on Friday, August 12, and that the sheriff's return was incorrect. She further testified that the sheriff did not explain the purport of the subpoena to her, but that the commonwealth's attorney's office had called two days earlier, on August 10, to inform Dr. Bellis to expect the subpoena.

Mrs. Bevins also testified that Dr. Bellis was absent from his office when the sheriff arrived with the subpoena on Friday, August 12, but that he learned of it between 2:00 and 3:00 p.m. that afternoon during a telephone conversation with Mrs. Bevins. Although the subpoena was not personally delivered to him, Dr. Bellis admitted that he knew, on Friday afternoon, that he was required to be in court on the following Monday, at 9:00 a.m., with the medical records of the victim in the *Noaks* case.

Without returning to his office, Dr. Bellis travelled to Texas on Saturday to deliver an airplane. He remained there on Sunday and did not begin his return trip to Virginia until 11:00 a.m. on Monday, the day of the *Noaks* trial. His estimated flight time was over six hours, but he was delayed by bad weather and arrived Monday night. At some time during the day, Dr. Bellis called his office with the request that the commonwealth's attorney's office be informed of his delay.

The trial court found that the substituted service of the subpoena duces tecum was timely and proper, and, in conjunction with Dr. Bellis' actual notice, would support a conviction of contempt for his failure to appear. The court further found that Dr. Bellis had voluntarily absented himself and delayed his return and that his absence from the jurisdiction did not, in the circumstances, amount to a lawful excuse. The court concluded that Dr.

Bellis had willfully and knowingly disobeyed a valid order of the court.

On appeal, Dr. Bellis argues that Title 19.2 of the Code, governing criminal procedure, contains no provisions authorizing substituted service of a subpoena. He points out that Code § 19.2-267 specifically provides that certain sections contained in Title 8.01 apply to criminal as well as civil cases, but that Code § 8.01-298, authorizing substituted service of witness subpoenas, is not among them. Therefore, his argument concludes, the General Assembly must have intended that all subpoenas in criminal cases be personally served.

We are not persuaded by that argument. Title 19.2 is silent with respect to the modes of service for witness subpoenas in criminal cases. It is necessary to look elsewhere for provisions governing such service. We think that the General Assembly, when codifying Title 19.2 in 1975, intended to leave the existing practice for the service of witness subpoenas in criminal cases unchanged. That practice had been prescribed for many years by statutes relating to civil procedure. *See, e.g.*, Code of 1919, §§ 4969 and 6217.

Code § 8.01-298 provides, in pertinent part:

"[A] summons for a witness . . . may be served:

1. At his or her usual place of business or employment during business hours, by delivering a copy thereof and giving information of its purport to the person found there in charge of such business or place of employment . . . ."

That section contains no language restricting its effect to civil cases. We conclude that the provisions of Title 8.01 prescribing the modes of service of witness subpoenas, including Code § 8.01-298, are equally applicable to criminal and civil cases.

The trial court made a factual finding that Pat Bevins was "the person found there in charge of such business" when the sheriff delivered the subpoena to Dr. Bellis' office. The court expressed doubt that the sheriff failed to explain the meaning of the subpoena when serving it, but stated that even if such a failure were to be assumed, it would have been inconsequential because Mrs. Bevins had expected the subpoena for two days, was entirely capable of reading and understanding the simple instructions contained therein, and in fact did so in order to explain the nature of

the subpoena by telephone to Dr. Bellis after she had received it. We agree. Dr. Bellis admitted to the court that he knew, on Friday afternoon, that he was under a subpoena to be in court on Monday morning with the medical records pertinent to the *Noaks* case. The trial court correctly held that the subpoena was validly served.

No contention is made on appeal that there was an unreasonably short interval between service of the subpoena and the court appearance the subpoena commanded.* If that were the case, however, the burden would have been on the subpoenaed witness to take such reasonable steps as time would permit to obtain an order quashing the subpoena or granting other appropriate relief. *See* Rule 3A:12(d); W.H. Bryson, Handbook on Virginia Civil Procedure 404 (2d ed. 1989). Shortness of time, alone, would not furnish the witness an excuse for simply ignoring the subpoena.

Dr. Bellis argues that his actual knowledge of the existence and nature of the subpoena, and the fact that it had been served on his secretary, is immaterial because if actual knowledge is the sole requisite, sheriffs might dispense with service entirely, "remain in their offices, and conduct business by telephone." We agree that valid service of a subpoena in a mode prescribed by law is an essential element for a finding of contempt for failure to appear. Actual knowledge is not, however, immaterial.

Where substituted service has been validly made, the sheriff's return is prima facie correct. Code § 8.01-326. The return gives rise to a rebuttable presumption that the paper served, or knowledge of it, has actually reached the person sought to be served in time to permit compliance with its command. *See Rowe* v. *Hardy*, 97 Va. 674, 678, 34 S.E. 625, 626 (1899). That presumption furnishes an additional element for a finding of contempt. A person sought to be served may, of course, avoid punishment for contempt if he produces evidence sufficient to rebut the presumption that he had timely knowledge of the paper. Dr. Bellis' admission that he had actual knowledge of the subpoena renders unnecessary any inquiry into this additional element.

---

* Dr. Bellis does contend that a failure to appear as a witness in a criminal case is not punishable by contempt unless written notice is given at least five days before trial, citing Code § 19.2-267.1. That section relates exclusively to a summons issued "by a law-enforcement officer during the course of his immediate investigation of an alleged misdemeanor," *id.*, and is inapplicable here.

■■■ Disobedience to "any lawful process" is made subject to summary punishment for contempt by Code § 18.2-456(5). "Process" includes a subpoena directed to a witness. W. Burton, Legal Thesaurus 409 (1980). A finding of contempt for such disobedience must, indeed, rest upon four elements: (1) issuance of "lawful process," (2) valid service of the process by one of the modes prescribed by law, (3) timely knowledge of the process by the person upon whom service is sought, where service was not personal, and (4) willful disobedience of the process.

Because the record supports the trial court's findings of lawful process, valid service, timely knowledge, and willful disobedience, we will affirm the judgment of contempt.

*Affirmed.*