COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Frank, Petty and Senior Judge Haley
Argued at Alexandria, Virginia


YELP, INC.

OPINION BY
v.      Record No. 0116-13-4          JUDGE WILLIAM G. PETTY
JANUARY 7, 2014

HADEED CARPET CLEANING, INC.


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

Paul Alan Levy (Scott Michelman; Raymond D. Battocchi; Public
Citizen Litigation Group; Raymond D. Battocchi, P.C., on briefs),
for appellant.

Raighne C. Delaney (James Bruce Davis; Rachelle E. Hill; Bean,
Kinney & Korman, P.C., on brief), for appellee.

Amici Curiae:  The Reporters Committee for Freedom of the Press,
American Society of News Editors, Gannett Co., Inc., and The
Washington Post (Kevin M. Goldberg; Bruce D. Brown; Gregg P.
Leslie; Robert J. Tricchinelli; Barbara W. Wall; John B. Kennedy;
James A. McLaughlin; Kalea S. Clark; Fletcher, Heald & Hildreth
PLC, on brief), for appellant.


Yelp, Inc. ("Yelp") appeals from an order of the Circuit Court for the City of Alexandria

holding it in civil contempt for failing to comply with a subpoena *duces tecum* served upon it by

Hadeed Carpet Cleaning, Inc. ("Hadeed").[1]  On appeal, Yelp assigns two errors to the circuit

court's decision.  First, Yelp argues that the circuit court "violated the First Amendment by

ordering Yelp to identify seven anonymous Doe defendants, and then by holding Yelp in

contempt for its failure to comply with the order, thus stripping the Doe defendants of their First

_____

[1] We have jurisdiction over this appeal pursuant to Code § 19.2-318:  "From a judgment
for any civil contempt of court an appeal may be taken to the Court of Appeals.  A writ of error
shall lie from the Court of Appeals to a judgment for criminal contempt of court."

Amendment right to speak anonymously, all without requiring Hadeed to show that it had legally and factually sufficient claims against each defendant." Second, Yelp argues that the trial court erred "by asserting subpoena jurisdiction over Yelp, which is a non-party, foreign corporation." For the reasons stated below, we affirm the ruling of the circuit court.

## I. BACKGROUND

Yelp is a Delaware corporation with its principal place of business in California. Yelp is a social-networking website that allows its users to post and read reviews on local businesses. In the first quarter of 2013, Yelp had an average of approximately 102 million monthly, unique visitors. Contributors to Yelp have written over thirty-nine million local reviews.

Yelp users must register to post reviews. The registration process requires users to provide Yelp with a valid email address. Users are then free to choose a screen name to use when posting their reviews. Yelp further allows users to designate a zip code of their own choosing as their location. Yelp does not require users to use their actual name or place of residence. Yelp typically records the Internet Protocol ("IP") address from which each posting is made. This information is stored in Yelp's administrative database, which is accessible to Yelp's custodian of records in San Francisco.

During registration, Yelp users are required to agree to Yelp's Terms of Service and Content Guidelines ("TOS"). The TOS require users to have actually been customers of the business in question before posting a review. The TOS further require users to base their reviews on their own personal experiences. Yelp may remove posts that it deems in violation of the TOS. Moreover, Yelp employs a proprietary algorithm to filter potentially less reliable reviews. These reviews are moved to a separate page that a user can access by clicking on a filtered reviews link at the bottom of a business listing.

Hadeed is a Virginia corporation doing business in the City of Alexandria. Hadeed takes customers' carpets to its premises for cleaning.

As of October 19, 2012, Yelp's website displayed seventy-five reviews about Hadeed and eight reviews about a related company, Hadeed Oriental Rug Cleaning. These reviews were posted by various Yelp users, and a number of the reviews were critical of Hadeed. Hadeed filed suit against the authors of seven specific critical reviews. In these reviews, the authors implicitly or explicitly held themselves out to be Hadeed customers. In its complaint, Hadeed alleged that it tried to match the negative reviews with its customer database but could find no record that the negative reviewers were actually Hadeed customers. Consequently, Hadeed alleged that the negative reviewers were not actual customers; instead, the Doe defendants falsely represented themselves to be customers of Hadeed. Hadeed's complaint further alleged that the negative comments were defamatory because they falsely stated that Hadeed had provided shoddy service to each reviewer.

Hadeed filed its complaint on July 2, 2012. On July 3, 2012, Hadeed issued a subpoena *duces tecum* to Yelp, seeking documents revealing information about the authors of each of the challenged reviews. On July 19, 2012, Yelp served written objections to the subpoena *duces tecum*. In its objections, Yelp contended that Hadeed had not complied with Virginia's procedure for subpoenas to identify anonymous Internet users, Code § 8.01-407.1, among other objections. On July 27, 2012, Hadeed served a renewed subpoena *duces tecum* on Yelp that complied with the procedural requirements of Code § 8.01-407.1. Yelp filed written objections to the renewed subpoena *duces tecum*. Hadeed moved to overrule the objections and cross-moved to enforce the subpoena *duces tecum*.

On November 19, 2012, the circuit court issued an order enforcing the subpoena *duces tecum*. The circuit court ruled that the service of the subpoena *duces tecum* on Yelp's registered

agent in Virginia provided jurisdiction.  Furthermore, the circuit court ruled that Hadeed's

subpoena *duces tecum* complied with both the First Amendment and the standards enumerated in

Code § 8.01-407.1.  In order to appeal the circuit court's order, and protect its users' rights, Yelp

informed Hadeed that it would not comply with the circuit court's order.  Hadeed moved to have

Yelp held in contempt.  The circuit court held Yelp in civil contempt, imposing a monetary

sanction of $500 and awarding Hadeed an additional $1,000 in attorney's fees.  This appeal

followed.[2]

## II. ANALYSIS

On appeal, Yelp presents two arguments.  First, Yelp argues that the First Amendment

requires a showing of merit on both the law and facts before a subpoena *duces tecum* to identify

an anonymous speaker is enforced.  Second, Yelp argues that the circuit court lacked jurisdiction

to subpoena its documents.

## A.  Subpoena *Duces Tecum* and Code § 8.01-407.1

We usually review a "'trial court's refusal to quash the issuance of a subpoena *duces*

*tecum* . . . under an abuse of discretion standard.'"  America Online, Inc. v. Nam Tai Elec., Inc., 264

Va. 583, 590-91, 571 S.E.2d 128, 132 (2002) (quoting America Online, Inc. v. Anonymous Pub.

Traded Co., 261 Va. 350, 359, 542 S.E.2d 377, 382 (2001)).  On issues involving the First

---

[2] We recognize that, as a general rule, litigants may not refuse to comply with a valid
order of a court and then challenge its validity when held in contempt.  Rather, "where the court
has jurisdiction of the parties and of the subject matter of the suit and the legal authority to make
the order, a party refusing to obey it, however erroneously made, is liable for contempt.  Such
order, though erroneous, is lawful within the meaning of the contempt statutes until it is reversed
by an appellate court."  Local 33B, United Marine Div. of Int'l Longshoremen's Ass'n v.
Commonwealth, 193 Va. 773, 784, 71 S.E.2d 159, 166 (1952) (quoting Robertson v.
Commonwealth, 181 Va. 520, 537, 25 S.E.2d 352 (1943)).  This is true "even if the statute upon
which it is based is later declared to be unconstitutional."  Id. at 783, 71 S.E.2d at 166.  However,
the Supreme Court has recognized an exception to this general rule when a witness is "compelled
to divulge privileged matters which have been given to him in confidence."  Robertson, 181 Va.
at 538, 25 S.E.2d at 360; see also HCA Health Services v. Levin, 260 Va. 215, 530 S.E.2d 417
(2000).  Neither party has addressed whether the customer names maintained by Yelp fall within
this exception.  Therefore, for purposes of this opinion, we will assume the exception applies.

Amendment, however, we have "an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" Bose Corp. v. Consumers Union, 466 U.S. 485, 499 (1984) (quoting New York Times v. Sullivan, 376 U.S. 254, 284-86 (1964)).

The First Amendment to the United States Constitution provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The First Amendment was originally applied only to federal action; however, it was extended to the states via the Fourteenth Amendment. See Gitlow v. New York, 268 U.S. 652, 666 (1925) ("[F]reedom of speech and of the press—which are protected by the First Amendment from abridgement by Congress—are among the fundamental personal rights and 'liberties' protected by the due process clause of the Fourteenth Amendment from impairment by the States.").[3]

Anonymous speech is protected by the First Amendment. Buckley v. American Constitutional Law Found., 525 U.S. 182, 197-99 (1999); McIntyre v. Ohio Elections Comm., 514 U.S. 334 (1995); Talley v. California, 362 U.S. 60 (1960).

> "Anonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind." Great works of literature have frequently been produced by authors writing under assumed names. Despite readers' curiosity and the public's interest in identifying the creator of a work of art, an author generally is free to decide whether or not to disclose his or her true identity. The decision in favor of anonymity may be motivated by fear of

---

[3] Yelp's argument is that the subpoena *duces tecum* violated the First Amendment of the Constitution of the United States. Yelp does not mention the Virginia counterpart, Article I, § 12 of the Constitution of Virginia. Nevertheless, we note that "'[t]he freedom of speech guaranteed by Article I, § 12 of the Constitution of Virginia is co-extensive with the protections guaranteed by the First Amendment of the Constitution of the United States.'" Daily Press, Inc. v. Commonwealth, 285 Va. 447, 455 n.7, 739 S.E.2d 636, 640 n.7 (2013) (quoting Black v. Commonwealth, 262 Va. 764, 785, 553 S.E.2d 738, 750 (2001) (Hassell, C.J., dissenting)); see also Elliott v. Commonwealth, 267 Va. 464, 473-74, 593 S.E.2d 263, 269 (2004) ("We take this opportunity to declare that Article I, § 12 of the Constitution of Virginia is coextensive with the free speech provisions of the federal First Amendment."). Thus, for the purposes of this opinion, we make no distinction between the protections provided by the First Amendment of the Constitution of the United States and Article I, § 12 of the Constitution of Virginia.

> economic or official retaliation, by concern about social ostracism, or merely by a desire to preserve as much of one's privacy as possible. Whatever the motivation may be, at least in the field of literary endeavor, the interest in having anonymous works enter the marketplace of ideas unquestionably outweighs any public interest in requiring disclosure as a condition of entry. Accordingly, an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment.

McIntyre, 514 U.S. at 341-42 (quoting Talley, 362 U.S. at 64).

In Talley, there was a California statute that prohibited the distribution of "any handbill in any place under any circumstances" that did not identify the person who prepared, distributed, or sponsored the handbill. 362 U.S. at 60-61. The Supreme Court held that the statute was void on its face because "identification and fear of reprisal might deter perfectly peaceful discussions of public matters of importance." Id. at 65.

Thirty-five years after Talley, the Supreme Court upheld the right to speak anonymously on election-related matters. In McIntyre, there was an Ohio law that prohibited the distribution of campaign literature that did not identify the person issuing the literature. 514 U.S. at 344. The Supreme Court held, "[U]nder our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and dissent. Anonymity is a shield from the tyranny of the majority." Id. at 357. Four years after McIntyre, the Supreme Court heard a similar, election-related anonymous-speech case, and upheld the right to speak anonymously. See Buckley, 525 U.S. at 200 (invalidating, on First Amendment grounds, a Colorado statute that required initiative petition circulators to wear identification badges).

An Internet user does not shed his free speech rights at the log-in screen. The right to free speech is assiduously guarded in all mediums of expression, from the analog to the digital. The anonymous pamphleteer has the right to distribute literature without the looming specter of government interference. Similarly, the anonymous speaker has the right to express himself on

the Internet without the fear that his veil of anonymity will be pierced for no other reason than because another person disagrees with him.

1. The Rights of the Anonymous Speaker vs. The Right to Protect One's Reputation

The freedom of speech—and within this, the freedom to speak with anonymity—is not absolute. See Chaplinsky v. New Hampshire, 315 U.S. 568, 572 (1942) ("It is well understood that the right of free speech is not absolute at all times and under all circumstances."). If we assume that the Yelp reviews of Hadeed are lawful, then the John Does may remain anonymous. But if the reviews are unlawful in that they are defamatory, then the John Does' veil of anonymity may be pierced, provided certain procedural safeguards are met. This is because defamatory speech is not entitled to constitutional protection: "Our constitutional guarantees of free speech, as we have seen, protect expressions of opinion from action for defamation. Those constitutional guarantees have never been construed, however, to protect either criminal . . . or tortious conduct." Chaves v. Johnson, 230 Va. 112, 121-22, 335 S.E.2d 97, 103 (1985); see also Chaplinsky, 315 U.S. at 572 ("It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."); Sullivan, 376 U.S. at 269 ("[Defamation] can claim no talismanic immunity from constitutional limitations. It must be measured by standards that satisfy the First Amendment."). The bottom line is that "[s]preading false information in and of itself carries no First Amendment credentials." Herbert v. Lando, 441 U.S. 153, 171 (1979).

Furthermore, courts have long recognized a distinction in the level of protection the First Amendment accords to literary, religious, or political speech as compared to that accorded to

commercial speech. [4] Where, as here, speech constitutes an "expression related solely to the economic interests of the speaker and its audience," Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y., 447 U.S. 557, 561 (1980), "any First Amendment right to speak anonymously 'enjoys a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, and is subject to modes of regulation that might be impermissible in the realm of noncommercial expression,'" Lefkoe v. Jos. A. Bank Clothiers, Inc., 577 F.3d 240, 248-49 (4th Cir. 2009) (quoting Bd. of Trustees of SUNY v. Fox, 492 U.S. 469, 477 (1989)).  Thus, the John Does' "First Amendment right to anonymity is subject to a substantial governmental interest in disclosure so long as disclosure advances that interest and goes no further than reasonably necessary."  Id. (citing Central Hudson Gas & Elec. Corp., 447 U.S. at 566).

### a.  The Law of Defamation

"Since the latter half of the 16th century, the common law has afforded a cause of action for damage to a person's reputation by the publication of false and defamatory statements." Milkovich v. Lorain Journal Co., 497 U.S. 1, 12 (1990).  A person's, or business's, reputation is a precious commodity.  Perhaps, Shakespeare said it best:

> "Good name in man and woman, dear my lord,
>
> Is the immediate jewel of their souls.
>
> Who steals my purse steals trash;
>
> 'Tis something, nothing;
>
> 'Twas mine, 'tis his, and has been slave to thousands;
>
> But he that filches from me my good name

---

[4] Neither party has addressed this distinction, nor has Yelp argued that the emails were anything other than commercial speech.  That having been said, we find it difficult to conceive how these emails could be read as anything other than such an expression.

Robs me of that which not enriches him,

And makes me poor indeed."

Id. (quoting Shakespeare, Othello Act III, scene 3). Thus, "[d]efamation law developed not only as a means of allowing an individual to vindicate his good name, but also for the purpose of obtaining redress for harm caused by such statements." Id. The ability to obtain redress for harm caused by defamatory statements has also been extended to allow a person to vindicate the good name of his business. See Tronfeld v. Nationwide Mutual Ins. Co., 272 Va. 709, 713, 636 S.E.2d 447, 449-50 (2006) (providing that defamatory words which prejudice a person in his trade or business are actionable per se).

In order to state a cause of action for defamation in Virginia, one needs to allege that a statement is "both false and defamatory." Tharpe v. Saunders, 285 Va. 476, 481, 737 S.E.2d 890, 892 (2013). And the elements of defamation must be met: "'(1) publication of (2) an actionable statement with (3) the requisite intent.'" Id. at 480, 737 S.E.2d at 892 (quoting Jordan v. Kollman, 269 Va. 569, 575, 612 S.E.2d 203, 206 (2005)). Further, "[d]efamatory words that cause prejudice to a person in her profession are actionable as defamation *per se*." Hyland v. Raytheon Technical Serv. Co., 277 Va. 40, 46, 670 S.E.2d 746, 750 (2009). However, "'[c]auses of action for defamation . . . are subject to principles of freedom of speech arising under the First Amendment to the United States Constitution and Article I, Section 12 of the Constitution of Virginia.'" Tharpe, 285 Va. at 481, 737 S.E.2d at 892 (quoting Yeagle v. Collegiate Times, 255 Va. 293, 295, 497 S.E.2d 136, 137 (1998)). Within these principles is the protection of speech that is merely a matter of opinion.

> The First Amendment to the Federal Constitution and article I, section 12 of the Constitution of Virginia protect the right of the people to teach, preach, write, or speak any such opinion, however ill-founded, without inhibition by actions for libel and slander. "[E]rror of opinion may be tolerated where reason is left free to combat it." Thomas Jefferson's First Inaugural Address (1801).

"However pernicious an opinion may see[m], we depend for its correction not on the conscience of judges and juries but on the competition of other ideas."

Id. at 481, 737 S.E.2d at 893 (alterations in original) (citations omitted). It is important to note, however, that "'there is no constitutional value in false statements of fact.'" Id. (quoting Gertz v. Robert Welch, 418 U.S. 323, 340 (1974)). Therefore,

"pure expressions of opinion" are constitutionally protected and "cannot form the basis of a defamation action." "Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion." Furthermore, "[s]peech that does not contain a provably false factual connotation" is generally considered "'pure expression[] of opinion.'"

Id. (citations omitted). Nevertheless, even though "pure expressions of opinion are not actionable, '[f]actual statements made to support or justify an opinion . . . can form the basis of an action for defamation.'" Id. at 481 n.3, 737 S.E.2d at 893 n.3 (quoting Raytheon Tech. Servs. Co. v. Hyland, 273 Va. 292, 303, 641 S.E.2d 84, 90 (2007)). With these basic defamation principles in mind, we turn to the standard for piercing the veil of anonymity of an Internet speaker.

b. Piercing the Veil of Anonymity

Yelp argues that the First Amendment requires a showing of merit on both the law and the facts before a subpoena *duces tecum*[5] to identify an anonymous speaker is enforced. This is an issue of first impression at the appellate level in the Commonwealth. Moreover, neither the United States Supreme Court nor the Fourth Circuit Court of Appeals has addressed this issue. Thus, Yelp relies upon persuasive authority from other states to support its argument. See Dendrite Int'l, Inc. v. Doe No. 3, 775 A.2d 756 (N.J. Super. Ct. App. Div. 2001); Doe v. Cahill,

---

[5] A court order, such as a subpoena *duces tecum* that is issued at the request of a private party, constitutes state action and is subject to constitutional limitations. See Sullivan, 376 U.S. at 265. Accordingly, the subpoena power is necessarily limited to the extent that it impacts First Amendment rights. See NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 461 (1958).

884 A.2d 451 (Del. 2005). In relying upon persuasive authority from other states, however, Yelp delicately glosses over Code § 8.01-407.1, which sets forth the standard in the Commonwealth for discovering the identity of persons communicating anonymously over the Internet. Instead of applying the standard set forth in Code § 8.01-407.1, Yelp argues that we should adopt and apply the standards enunciated in <u>Dendrite</u>, <u>Cahill</u>, and their progeny, when deciding whether a subpoena to identify an anonymous speaker is enforced. We decline to do so.

### i. Code § 8.01-407.1

"'Statutory construction is a question of law which we review *de novo* on appeal.'" <u>Lynchburg Div. of Soc. Servs. v. Cook</u>, 276 Va. 465, 480, 666 S.E.2d 361, 368 (2008) (quoting <u>Parker v. Warren</u>, 273 Va. 20, 23, 639 S.E.2d 179, 181 (2007)). In construing statutes, we "'apply the plain language of a statute unless the terms are ambiguous.'" <u>Id.</u> (quoting <u>Boynton v. Kilgore</u>, 271 Va. 220, 227, 623 S.E.2d 922, 926 (2006)). Our "'primary objective . . . is to ascertain and give effect to legislative intent.'" <u>Commonwealth v. Amerson</u>, 281 Va. 414, 418, 706 S.E.2d 879, 882 (2011) (quoting <u>Conger v. Barrett</u>, 280 Va. 627, 630, 702 S.E.2d 117, 118 (2010)). Legislative intent is discovered "'by giving to all the words used their plain meaning, and construing all statutes *in pari materia* in such manner as to reconcile, if possible, any discordant feature which may exist, and make the body of the laws harmonious and just in their operation.'" <u>Thomas v. Commonwealth</u>, 59 Va. App. 496, 500, 720 S.E.2d 157, 159-60 (2012) (quoting <u>Lucy v. Cnty. of Albemarle</u>, 258 Va. 118, 129-30, 516 S.E.2d 480, 485 (1999)). Finally, "'[W]e . . . presume that the legislature chose, with care, the words it used when it enacted the relevant statute.'" <u>Seabolt v. Cnty. of Albemarle</u>, 283 Va. 717, 720, 724 S.E.2d 715, 717 (2012) (quoting <u>Addison v. Jurgelsky</u>, 281 Va. 205, 208, 704 S.E.2d 402, 404 (2011)).

Virginia has developed an unmasking standard in Code § 8.01-407.1; it is one of many jurisdictions to develop its own unmasking standard.[6] On February 22, 2001, the General Assembly passed Senate Joint Resolution 334, which provided "for a study of the discovery of electronic data and proposal of a statutory scheme or rules of evidence to govern the discovery of electronic data in civil cases in the courts of Virginia." Discovery of Electronic Data, S. Doc. No. 9, at 7 (2002) (citing S.J. Res. 334, Va. Gen. Assem. (2001)). Pursuant to this Resolution, the Office of the Executive Secretary of the Virginia Supreme Court prepared a comprehensive, ninety-eight-page report that was submitted to the Governor and General Assembly. Id. at 4. The report included a summary, which set forth the results of its study:

> The Report first introduces the importance of the Internet and World-Wide Web as forums for communication protected by Constitutional free speech rights, as recognized by the United States Supreme Court and consistent with pre-existing Virginia law. The role of anonymous speech in this medium is discussed, along with federal and Virginia law relevant to an understanding of the importance that anonymity plays in the free expression of ideas, under protections for free expression, privacy and freedom of association with others.

> The Report canvasses the existing case law directly on the topic of requests for confidential information relating to electronic communications, which is not extensive. Analogies from other, more developed, bodies of law are sketched. The prevailing standards for decisions on contested applications to pierce the anonymity of protected communications in civil litigation are discussed: the key to this analysis is that in order for a trial court to perform the balancing of rights necessary for a determination of whether intrusion upon protected anonymous speech will be allowed, the court must first be provided with the information it needs to perform that balancing. To decide these issues, the trial

---

[6] There are at least nine unmasking standards—not including Virginia's statutory standard—that state and federal courts have created. See Doe I v. Individuals (AutoAdmit.com), 561 F. Supp. 2d 249, 254-56 (D. Conn. 2008); Doe v. 2TheMart.com Inc., 140 F. Supp. 2d 1088, 1095 (W.D. Wash. 2001); Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999); Mobilisa, Inc. v. Doe 1, 170 P.3d 712, 721 (Ariz. Ct. App. 2007); Krinsky v. Doe 6, 72 Cal. Rptr. 3d 231, 244-45 (Ct. App. 2008); Doe No. 1 v. Cahill, 884 A.2d 451, 460-61 (Del. 2005); Solers, Inc. v. Doe, 977 A.2d 941, 954 (D.C. 2009); Indep. Newspapers, Inc. v. Brodie, 966 A.2d 432, 457 (Md. 2009); Dendrite Int'l, 775 A.2d at 760-61.

court in Virginia need not decide the merits of the case pending elsewhere, but must have sufficient considerations illuminated by the parties' submissions to permit assessment of the need for the contested information, on the one hand, and the severity of the intrusion on free speech, on the other. Tests applied in this situation by other courts, state and federal, are summarized and assessed in the Report.

A brief summary of how the subpoena process now operates in the federal courts and the Virginia circuit courts is provided in the body of the Report, along with several analogous procedures and doctrines that suggest considerations for inclusion in any effort to provide a unified approach to subpoenas for electronic information.

The relevant considerations and factors are specifically set forth and discussed, and a proposed statute or rule embodying the applicable provisions is then proposed.

Id. After considering the report, the General Assembly adopted Code § 8.01-407.1 as it was drafted in the report.

Code § 8.01-407.1 is titled, "Identity of persons communicating anonymously over the Internet." Code § 8.01-407.1 provides a procedure that must be followed when a person files a subpoena seeking information about the identity of an anonymous individual that engaged in Internet communications that are allegedly tortious or illegal. Code § 8.01-407.1(A). All such subpoenas must follow the procedure listed in the statute. That procedure is listed below in its entirety.

1. At least thirty days prior to the date on which disclosure is sought, a party seeking information identifying an anonymous communicator shall file with the appropriate circuit court a complete copy of the subpoena and all items annexed or incorporated therein, along with supporting material showing:

a. That one or more communications that are or may be tortious or illegal have been made by the anonymous communicator, or that the party requesting the subpoena has a legitimate, good faith basis to contend that such party is the victim of conduct actionable in the jurisdiction where the suit was filed. A copy of the communications that are the subject of the action or subpoena shall be submitted.

- 13 -

b. That other reasonable efforts to identify the anonymous communicator have proven fruitless.

c. That the identity of the anonymous communicator is important, is centrally needed to advance the claim, relates to a core claim or defense, or is directly and materially relevant to that claim or defense.

d. That no motion to dismiss, motion for judgment on the pleadings, or judgment as a matter of law, demurrer or summary judgment-type motion challenging the viability of the lawsuit of the underlying plaintiff is pending. The pendency of such a motion may be considered by the court in determining whether to enforce, suspend or strike the proposed disclosure obligation under the subpoena.

e. That the individuals or entities to whom the subpoena is addressed are likely to have responsive information.

Code § 8.01-407.1(A). The statute also has a notice provision in section A, subsection three. The notice provision provides:

Except where the anonymous communicator has consented to disclosure in advance, within five business days after receipt of a subpoena and supporting materials calling for disclosure of identifying information concerning an anonymous communicator, the individual or entity to whom the subpoena is addressed shall (i) send an electronic mail notification to the anonymous communicator reporting that the subpoena has been received if an e-mail address is available and (ii) dispatch one copy thereof, by registered mail or commercial delivery service, return receipt requested, to the anonymous communicator at his last known address, if any is on file with the person to whom the subpoena is addressed.

Code § 8.01-407.1(A)(3).

After receiving notice, the anonymous communicator, or any interested party, may file a written objection, motion to quash, or motion for protective order "at least seven business days prior to the date on which disclosure is sought under the subpoena." Code § 8.01-407.1(A)(4). Finally, "the party to whom the subpoena is addressed shall not comply with the subpoena earlier

- 14 -

than three business days before the date on which disclosure is due, to allow the anonymous communicator the opportunity to object." Code § 8.01-407.1(A)(6).

In summation, a plaintiff seeking to uncover the identity of an anonymous Internet speaker in the Commonwealth must show a circuit court that (1) he has given notice of the subpoena to the anonymous communicator via the Internet service provider; (2)(a) communications made by the anonymous communicator are or may be tortious or illegal *or* (b) the plaintiff "has a legitimate, good faith basis to contend that such party is the victim of conduct actionable in the jurisdiction where the suit is filed," Code § 8.01-407.1(A)(1)(a); (3) other "reasonable efforts to identify the anonymous communicator have proven fruitless," Code § 8.01-407.1(A)(1)(b); (4) the identity of the anonymous communicator is important, is centrally needed to advance the claim, is related to the claim or defense, or is directly relevant to the claim or defense; (5) no motion challenging the viability of the lawsuit is pending; and (6) the entity to whom the subpoena is addressed likely has responsive information. Code § 8.01-407.1(A)(1)(a)-(e) and (3).

Thus, the plaintiff must first show the circuit court that he has given notice of the subpoena to the Internet service provider, who in turn provided notice to the anonymous communicator. Notice provides the anonymous communicator with the chance to defend himself and maintain his anonymity.

The second prong consists of two, distinct subparts. Under the first subpart, the plaintiff must show that the communications are or may be tortious. If there is direct evidence demonstrating that the communications are tortious, and the plaintiff provides that evidence to the circuit court, then there is no need to analyze the second subpart of this prong. The second subpart, which is explicitly separated from the first subpart by the conjunction *or*, requires the plaintiff to show that he has "legitimate, good faith basis" for his belief that the conduct is

- 15 -

tortious.  Thus, the plaintiff can either show that the communications are or may be tortious or show that he has a "legitimate, good faith basis" for his belief that the communications are tortious.

The third prong requires the plaintiff to show that other "reasonable efforts to identify the anonymous communicator have proven fruitless."  Code § 8.01-407.1(A)(1)(b).  This is merely a requirement that the plaintiff exhaust all other means of identifying the anonymous communicator.  Indeed, by exhausting all other means of identifying the anonymous communicator, the plaintiff can show a real need for the identity of the person before the veil of anonymity is pierced.

The fourth prong provides the circuit court with some leeway to apply a balancing test to the request for a subpoena.  The plaintiff must show that the identity of the anonymous communicator is important, is centrally needed to advance the claim, is related to the claim or defense, or is directly relevant to the claim or defense.  In order to make this determination, a circuit court must necessarily balance the interests of the anonymous communicator against the interests of the plaintiff in discovering the identity of the anonymous communicator.

The fifth prong speaks for itself.  It is designed to assure the circuit court that there is no dispositive motion pending before the court before it rules on the subpoena.

Similarly, the sixth prong speaks for itself.  It merely requires a showing that the entity to whom the subpoena is addressed has responsive information.

Code § 8.01-407.1 provides the test for uncovering the identity of an anonymous Internet communicator in Virginia.  We are "reluctant to declare legislative acts unconstitutional, and will do so only when the infirmity is clear, palpable, and practically free from doubt."  Mahan v. NCPAC, 227 Va. 330, 335, 315 S.E.2d 829, 832 (1984) (citing Blue Cross v. Commonwealth,

221 Va. 349, 358, 269 S.E.2d 827, 832 (1980); Green v. Cnty. Bd., 193 Va. 284, 287, 68 S.E.2d 516, 518 (1952)).  This is because

> [t]here is a strong presumption in favor of the constitutionality of statutes.  Indeed, "[t]here is no stronger presumption known to the law than that which is made by the courts with respect to the constitutionality of an act of Legislature."  Any reasonable doubt as to the constitutionality of a statute must be resolved in favor of its constitutionality, and "[o]nly where it is plainly in violation of the Constitution may the court so decide."  The General Assembly may enact any law or take any action "unless it is prohibited by the state or federal constitution in express terms or by necessary implication."

FFW Enters. v. Fairfax Cnty., 280 Va. 583, 590, 701 S.E.2d 795, 799-800 (2010) (citations omitted).

We decline to declare Code § 8.01-407.1 unconstitutional.  We cannot identify a clear, palpable, and free from doubt infirmity.  Therefore, we hold that Code § 8.01-407.1 provides the path of analysis that a circuit court must follow when determining whether to enforce a subpoena *duces tecum* seeking the identity of an anonymous communicator.

ii.  <u>Dendrite</u>, <u>Cahill</u>, and their Progeny

Nevertheless, Yelp argues that we should apply the standards enunciated in <u>Dendrite</u>, <u>Cahill</u>, and their progeny when determining whether a subpoena to identify an anonymous defendant should be enforced.  We find Yelp's argument unpersuasive.

In <u>Dendrite</u>, an intermediate appellate court in New Jersey held that a plaintiff seeking to uncover the identity of an anonymous defendant must meet a five-part test:  the plaintiff must (1) give notice to the anonymous defendant; (2) identify the exact statements that purportedly constitute actionable speech; (3) establish a prima facie cause of action against the defendant based on the complaint and all information provided to the court; (4) "produce sufficient evidence supporting each element of its cause of action, on a prima facie basis, prior to a court ordering the disclosure of the identity of the unnamed defendant"; (5) "balance the defendant's

- 17 -

First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed." Dendrite, 775 A.2d at 760-61.

In Cahill, the Supreme Court of Delaware adopted a test that requires the plaintiff to both make reasonable efforts to notify the defendant and "support his defamation claim with facts sufficient to defeat a summary judgment motion." Cahill, 884 A.2d at 460. In so holding, the Cahill court declined to adopt the balancing prong of the Dendrite test.

Although the case law has coalesced around the basic framework of the Dendrite and Cahill standards, they are not the only courts to articulate a standard for identifying anonymous Internet speakers. One commentator notes that

> [a]s of 2010, more than twenty courts have either promulgated unmasking standards or outlined specific criteria that parties seeking to identify anonymous internet speakers must satisfy before compelling discovery. These unmasking standards have been promulgated primarily at the state and federal district court levels and have been formulated on a jurisdiction-by-jurisdiction basis, resulting in what has been described as an "entire spectrum" or, less charitably, a "morass" of unmasking standards.

Matthew Mazzotta, Note: Balancing Act: Finding Consensus on Standards for Unmasking Anonymous Internet Speakers, 51 B.C. L. Rev. 833, 846 (2010).

There is no need for us to adopt persuasive authority from other states. In drafting Code § 8.01-407.1, the General Assembly considered persuasive authority from other states and made the policy decision to include or exclude factors that other states use in their unmasking standards. The General Assembly's unmasking standard was ultimately promulgated in Code § 8.01-407.1. This is the standard that we will apply.

### 2. Hadeed, Yelp, and the Doe Defendants

Here, it is clear that the circuit court complied with the requirements of Code § 8.01-407.1 in determining whether to enforce the subpoena *duces tecum* seeking the identity of

the Doe defendants. Accordingly, we hold that the circuit court did not abuse its discretion in enforcing the subpoena *duces tecum*.

Turning to the first prong of Code § 8.01-407.1(A)(1)(a), it is evident that Hadeed provided the requisite notice to Yelp. Indeed, Yelp concedes that Hadeed provided the requisite notice. Accordingly, after making an independent review of the whole record, we hold that the circuit court did not abuse its discretion in ruling that Hadeed met the first prong of Code § 8.01-407.1(A)(1)(a).

Turning to the second prong, it is without dispute that the Doe defendants have a constitutional right to speak anonymously over the Internet. However, that right must be balanced against Hadeed's right to protect its reputation. The circuit court, in determining whether to enforce the subpoena *duces tecum* under Code § 8.01-407.1, stated:

> Among other things, [Code § 8.01-407.1] requires that one show that the statements "may be tortious" and that the "identity of the anonymous communicator is important, is centrally needed to advance the claim, relates to a core claim or defense, or is directly and materially relevant to that claim or defense." This Court finds that Hadeed's subpoena *duces tecum* complies with the requisite standard enumerated in Code § 8.01-407.1 and that the statements are tortious if not made by customers of Hadeed Carpet Cleaning and the identity of the communicators is essential to maintain a suit for defamation.

Thus, the circuit court held that Hadeed met the statutory standard for requiring Yelp to disclose the identity of the Doe defendants.

In order to meet the second prong of Code § 8.01-407.1(A)(1)(a), Hadeed could either show that the communications are or may be tortious or show that it has a legitimate, good faith basis for its belief that the communications are tortious. Here, it is clear, as the circuit court held, that if the Doe defendants were not customers of Hadeed, then their Yelp reviews *are* defamatory. Assuming without deciding that the Doe defendants are not customers of Hadeed, the first subpart of this prong is met because the Doe defendants published a tortious, defamatory

- 19 -

statement with the requisite intent.  See Tharpe, 285 Va. at 481, 737 S.E.2d at 892.  Moreover,

Hadeed met the second subpart of this prong because it showed that it had a legitimate, good

faith basis for its belief that the reviews are defamatory.  It established that it had no record of

having provided services to the posters.  Specifically, Yelp alleged the following in its subpoena

*duces tecum*:

> 8.  After conducting an independent investigation in an attempt to match the negative reviews contained in Exhibit 5 with customers on the Hadeed customer database, Hadeed determined that it simply had no record that the negative reviewers were ever actually Hadeed customers.

> 9.  Consequently, Hadeed believes that the reviews contained in Exhibit 5 are not the opinions of its customers, but were made by Defendants falsely representing themselves as customers of Hadeed.

> 10.  The negative reviews in Exhibit 5 are false and defamatory.  For example, user "Bob G." from Oakton allegedly relates how he was in a desperate need of emergency carpet cleaning and was ripped off.  User "Chris H." from Washington reported that his precious rugs were shrunk.  User "J8." from Falls Church reports that he was charged for work never performed.  User "YB." from Fairfax reports that unauthorized work was performed and his rug was stained.  One user, "Aris P." from Haddonfield, N.J. reports that the price was double the quote and that Hadeed was once bankrupt.  Many of the negative reviews report that the price was double what was charged [sic].  After combing it customer records, Hadeed was at a loss to find record of these allegations.  Regarding Aris P., in particular, Hadeed conducts no business in New Jersey.

> 11.  Not only was Hadeed unable to find any evidence that the negative reviewers were ever Hadeed customers, but many of the negative reviewers use the same theme.  For example, negative reviewers Bob G., YB, and Aris P. use the theme that Hadeed doubled the price.  Negative reviewers Bob G., Chris H., MP., Mike M., and Aris P. criticize Hadeed's advertising.

Generally, a Yelp review is entitled to First Amendment protection because it is a

person's opinion about a business that they patronized.  See Tharpe, 285 Va. at 481, 737 S.E.2d

at 893.  But this general protection relies upon an underlying assumption of fact:  that the

reviewer was a customer of the specific company and he posted his review based on his personal experience with the business. If this underlying assumption of fact proves false, in that the reviewer was never a customer of the business, then the review is not an opinion; instead, the review is based on a false statement of fact—that the reviewer is writing his review based on personal experience. And "'there is no constitutional value in false statements of fact.'" Id. (quoting Gertz, 418 U.S. at 340).

Here, Hadeed attached sufficient evidence[7] to its subpoena *duces tecum* indicating that it made a thorough review of its customer database to determine whether all of the Yelp reviews were written by actual customers. After making such a review, Hadeed discovered that it could not match the seven Doe defendants' reviews with actual customers in its database. Thus, the evidence presented by Hadeed was sufficient to show that the reviews are or may be defamatory, if not written by actual customers of Hadeed. Moreover, Hadeed sought the subpoena *duces tecum* under the legitimate, good faith belief that the Doe defendants were not former customers, and, therefore, their reviews were defamatory.

After making an independent review of the whole record, we hold that the circuit court did not abuse its discretion in ruling that the communications made by the Doe defendants "are tortious if not made by customers of Hadeed." In so holding, the circuit court correctly applied the second prong of Code § 8.01-407.1(A)(1)(a).

Turning to the third prong, we find that Hadeed took reasonable efforts to identify the anonymous communicators and those efforts proved fruitless. Hadeed represented to the circuit court that it compared all of the Yelp reviews with its customer database. Out of all of the Yelp reviews, Hadeed identified seven reviewers whose information could not be found in their

---

[7] Hadeed attached evidence that it made an independent investigation of its customer database in an attempt to match all of the Yelp reviews with its customers. Further, Hadeed attached screenshots of the specific reviews that it alleged were defamatory.

- 21 -

customer database.  The circuit court, in reaching its holding, considered this evidence and ruled that Hadeed complied with the requirements of Code § 8.01-407.1(A)(1)(b).  Moreover, Hadeed first contacted Yelp to obtain the identity of the Doe defendants.  Yelp refused to comply.  Thus, Hadeed was then forced to resort to a subpoena *duces tecum* to obtain the identity of the Doe defendants.  After making an independent review of the whole record, we hold that the circuit court did not abuse its discretion in ruling that Hadeed took reasonable efforts to identify the Doe defendants before requesting the subpoena *duces tecum*.

Turning to the fourth prong, we find that the identity of the Doe defendants is important, is centrally needed to advance the claim, is related to the claim or defense, or is directly relevant to the claim or defense.  Without the identity of the Doe defendants, Hadeed cannot move forward with its defamation lawsuit.  There is no other option.  The identity of the Doe defendants is not only important, it is necessary.  The circuit court considered this in making its decision.  After making an independent review of the whole record, we hold that the circuit court did not abuse its discretion in ruling that the identity of the Doe defendants is important and centrally needed to advance the defamation claim.

Turning to the fifth and sixth prongs, we find that there was no dispositive motion pending before the circuit court at the time it made its decision, and we find that Yelp has responsive information.  These prongs were not disputed at the circuit court.  The record does not indicate that there was a dispositive motion pending before the circuit court before it made its decision on the subpoena *duces tecum*.  Further, Yelp concedes that it keeps responsive information on all of the users of its website.  Therefore, after making an independent review of the whole record, we hold that the circuit court did not abuse its discretion in making its decision in regard to the fifth and sixth prongs of  Code § 8.01-407.1(A)(1).

We have made an independent examination of the whole record, and we cannot say that the circuit court abused its discretion. The judgment of the circuit court "'does not constitute a forbidden intrusion on the field of free expression.'" Bose Corp., 466 U.S. at 499 (quoting Sullivan, 376 U.S. at 285). Accordingly, we affirm the circuit court's decision.

### B. Subpoena *Duces Tecum* and Jurisdiction

Yelp next argues that the trial court erred by asserting subpoena jurisdiction over Yelp, which is a non-party, foreign corporation. We disagree.

"'We review the trial court's refusal to quash the issuance of a subpoena *duces tecum* . . . under an abuse of discretion standard.'" America Online, Inc. v. Nam Tai Elec., Inc., 264 Va. at 590-91, 571 S.E.2d at 132 (quoting America Online, Inc. v. Anonymous Pub. Traded Co., 261 Va. at 359, 542 S.E.2d at 382). However, we review questions of law *de novo*. This involves a question of law because it requires us to interpret the relevant service of process statutes.

Yelp is a non-party, foreign corporation that is headquartered in San Francisco, California. But Yelp is registered to do business in the Commonwealth and has a registered agent in the Commonwealth. Yelp argues that the circuit court lacked jurisdiction to subpoena documents from Yelp. Within this, Yelp argues that the mere presence of a registered agent is not enough to confer jurisdiction. In so arguing, Yelp skirts around the rules of the Supreme Court and the service of process statutes found in the Virginia Code.

A subpoena *duces tecum* is a rule-based discovery tool. The procedure for issuing a subpoena *duces tecum* to a non-party is found in Rule 4:9A. The Rule is titled, "Production from Non-Parties of Documents, Electronically Stored Information, and Things and Entry on Land for Inspection and Other Purposes; Production at Trial." The Rule creates two methods by which a subpoena *duces tecum* may be issued: by the clerk of court or by an attorney. Rule 4:9A(1) and (2).

The procedure for the issuance of a subpoena *duces tecum* by the clerk of court is found in

Rule 4:9A(1):

> Upon written request therefor filed with the clerk of the court in which the action or suit is pending by counsel of record for any party or by a party having no counsel in any pending case, with a certificate that a copy thereof has been served pursuant to Rule 1:12 upon counsel of record and to parties having no counsel, *the clerk shall issue to a person not a party therein a subpoena duces tecum subject to this Rule.*

(Emphasis added).

The procedure for the issuance of a subpoena *duces tecum* by an attorney is found in

Rule 4:9A(2). Under this rule, an attorney-at-law may personally issue the subpoena *duces tecum*,

but a copy of it must be sent to all parties, and it must be filed with the clerk's office in which the

case is pending. Rule 4:9A(a). Further, the person to whom the subpoena *duces tecum* is directed

may file a written objection. Rule 4:9A(b). If an objection is made, then the party issuing the

subpoena may seek a court order compelling disclosure. Id.

Rule 4:9A, however, does not state *how* a subpoena *duces tecum* is to be served on a

non-party, foreign corporation. Instead, Code § 8.01-301 sets forth the method for serving process

on a foreign corporation.

Code § 8.01-301 provides that service may be effected "[b]y personal service . . . on the

registered agent of a foreign corporation which is authorized to do business in the Commonwealth

. . . ." Code § 8.01-301(1). Code § 13.1-766[8] works in conjunction with Code § 8.01-301 in that

it explicitly defines the purpose of a foreign corporation's "registered agent." Code § 13.1-766

provides, in relevant part: "The registered agent of a foreign corporation authorized to transact

business in this Commonwealth shall be an agent of such corporation upon whom any *process,*

---

[8] Code § 13.1-766 applies to corporations that issue stock. Code § 13.1-928 applies to corporations that do not issue stock. The rules for service are functionally similar for stock corporations and non-stock corporations. Yelp is a corporation that issues stock; therefore, we analyze only Code § 13.1-766.

*notice, order or demand required or permitted by law* to be served upon the corporation may be served." (Emphasis added).[9]

Code § 8.01-301(1) and Code § 13.1-766 explicitly allow for service on a registered agent of a foreign corporation that is authorized to do business in the Commonwealth. Service includes "any process, notice, order or demand required or permitted by law." Code § 13.1-766. A subpoena *duces tecum* falls within the definition of "process," as used in Code § 13.1-766. See Bellis v. Commonwealth, 241 Va. 257, 262, 402 S.E.2d 211, 214 (1991) ("'Process,' includes a subpoena directed to a witness.").

Yelp's registered agent in Virginia was served with a subpoena *duces tecum* by Hadeed. This constituted service of process under Code § 13.1-766. Accordingly, we agree with the circuit court's holding that "service of a subpoena *duces tecum* on Yelp's registered agent in Virginia provides jurisdiction for th[e] Court to adjudicate the motion to compel." Therefore, we affirm the circuit court's decision.

### III. CONCLUSION

For the foregoing reasons, we affirm the circuit court's decision.

Affirmed.

---

[9] In the same chapter of the Virginia Code, there is a provision that defines the sole duty of the registered agent: "The sole duty of the registered agent is to forward to the corporation at its last known address any process, notice or demand that is served on the registered agent." Code § 13.1-763(B).

Haley, S.J., concurring, in part, and dissenting, in part.

I concur with the majority: (1) that the trial court had subpoena jurisdiction over Yelp, and (2) that Code § 8.01-407.1 provides a procedural and substantive path of analysis for determining the propriety of issuing an unmasking subpoena *duces tecum* which constitutionally balances the First Amendment protection of an anonymous speaker and the right of redress for defamation.

Code § 8.01-407.1(A)(1)(a), (b), and (c) define the "supporting material" to be attached to the request for an unmasking subpoena *duces tecum*. This dissent maintains that the supporting material did not suffice to justify issuance of the subpoena.[10]

Subsection (A)(1)(a) requires that the communications "are or may be tortious." To be tortious the communications must be false. Tharpe v. Saunders, 285 Va. 476, 481, 737 S.E.2d 890, 892 (2013). Six of the seven communications claimed Hadeed overcharged and/or failed to honor a quoted price.[11] Nowhere in this cause has Hadeed claimed that any of the substantive statements are false. Rather, Hadeed maintains, these communicators *may* not have been customers, and, *if* they were not, the substantive statements may be tortious.

Subsection (A)(1)(b) requires that "reasonable efforts" for identification have been fruitless, and subsection (A)(1)(c) requires that identity is "needed to advance the claim."

In the trial court counsel for Hadeed stated: "I don't know whether that person is a customer or not, and we suspect not."

In material supporting issuance of the subpoena request, Hadeed writes:

> 8. After conducting an independent investigation in an attempt to match the negative reviews . . . with customers on the Hadeed

---

[10] I concur with the majority that Hadeed complied with all other subsections of Code § 8.01-407.1.

[11] One of the commenters claimed Hadeed had "shrunk" his rugs.

customer database, Hadeed determined that it simply had no record that the negative reviewers were ever actually Hadeed customers.

* * * * * * *

26. In order to advance its defamation claim, Hadeed must ascertain whether or not Defendants were in fact customers.

In oral argument before this Court, Hadeed candidly admitted that it cannot say the John Doe defendants are *not* customers until it obtains their identities.

This, I suggest, is a self-serving argument - one that proceeds from a premise the argument is supposed to prove. If Hadeed were an individual, he would be attempting to "'lift himself by his own bootstraps.'" Turpin v. Branaman, 190 Va. 818, 827, 58 S.E.2d 63, 67 (1950).

Anonymous speech is protected by the Constitution of the United States and by Article 1, Section 12 of the Constitution of Virginia. A business subject to critical commentary, commentary here not even claimed to be false in substance, should not be permitted to force the disclosure of the identity of anonymous commentators simply by alleging that those commentators may not be customers because they cannot identify them in their database.

Under the facts in this case, the balance envisioned by Code § 8.01-407.1 should weigh for the protection afforded by our Constitutions. Accordingly, I would reverse the trial court's finding of civil contempt and quash the subpoena *duces tecum*.