PRESENT: Lemons, C.J., Goodwyn, Millette, Mims, McClanahan, and Powell, JJ., and Koontz, S.J.

YELP, INC.

OPINION BY
v.  Record No. 140242        JUSTICE ELIZABETH A. McCLANAHAN
                                  April 16, 2015
HADEED CARPET CLEANING, INC.

FROM THE COURT OF APPEALS OF VIRGINIA

Yelp, Inc. ("Yelp"), appeals from the judgment of the Court of Appeals affirming the order of the Circuit Court of the City of Alexandria holding Yelp in civil contempt for failing to comply with a non-party subpoena duces tecum served upon it by Hadeed Carpet Cleaning, Inc. ("Hadeed"). The subpoena duces tecum directed Yelp, a Delaware corporation with its principal place of business in California, to produce documents located in California in connection with a defamation action filed by Hadeed against John Doe defendants. Because we conclude the circuit court was not empowered to enforce the subpoena duces tecum against Yelp, we will vacate the judgment of the Court of Appeals and the contempt order of the circuit court.

I.  BACKGROUND

Yelp operates a social networking website that allows registered users to rate and describe their experiences with local businesses. Since Yelp does not require users to provide their actual names, users may post reviews under pseudonyms.

Hadeed, a Virginia corporation doing business in Virginia, filed a defamation action in the circuit court against three John Doe defendants alleging they falsely represented themselves as Hadeed customers and posted negative reviews regarding Hadeed's carpet cleaning services on Yelp.

Hadeed issued a subpoena duces tecum to Yelp, seeking documents revealing the identity and other information about the authors of the reviews.  The information provided by users of Yelp upon their registration and the Internet Protocol addresses used by registered users who post reviews are stored by Yelp on administrative databases accessible only by specified Yelp employees located in San Francisco.[1] Yelp has no offices in Virginia.

Although Yelp's headquarters are located in California, Yelp is registered to do business in Virginia and has designated a registered agent for service of process in Virginia.  Hadeed served the subpoena duces tecum on Yelp's registered agent in Virginia.  Yelp objected to an initial subpoena duces tecum for, among other reasons, Hadeed's failure

_____

[1] Specifically, Yelp's "user operations team" is tasked with the duty of compiling the data that comprises information that would identify its users.  These employees, and "[n]o other employees" use "specialized access to this data" to compile information that would identify Yelp users in response to supboenas for such identifying data.

to comply with the requirements of Code § 8.01-407.1.  Hadeed

then issued a second subpoena duces tecum that complied with

the procedural requirements of Code § 8.01-407.1.  That section

sets forth the procedure that must be followed for any subpoena

seeking information identifying a tortfeasor "[i]n civil

proceedings where it is alleged that an anonymous individual

has engaged in Internet communications that are tortious."

Code § 8.01-407.1(A).[2]

After Yelp filed written objections to the subpoena duces

tecum, Hadeed moved to overrule the objections and enforce the

---

[2] Code § 8.01-407.1 was enacted following a study and
report on the discovery of electronic data pursuant to a Joint
Resolution of the General Assembly.  The Resolution recognized
that "Virginia is the center of the Internet, with numerous
multi-state and multi-national Internet businesses located in
the Commonwealth" and that motions regarding the discovery of
electronic data "arise out of cases pending in other states but
are being heard in the Commonwealth solely because the Internet
service providers. . . , which may be the custodians of such
electronic data, are located in the Commonwealth."  S.J. Res.
334, Va. Gen. Assem. (Reg. Sess. 2001).  In response to the
directions embodied in the Resolution, the Office of the
Executive Secretary of the Supreme Court of Virginia issued a
report on the disclosure of electronic information "maintained
by electronic communications service providers in Virginia,
particularly the legal procedure for [the] subpoena of such
information and the application of that procedure in cases
where litigation pending outside the Commonwealth of Virginia
results in an application to the Virginia courts for orders
compelling disclosure of information."  Executive Secretary of
the Supreme Court of Virginia, Report to the Governor and
General Assembly of Virginia: Discovery of Electronic Data,
Senate Doc. No. 9, at 1 (2002), available at
http://leg2.state.va.us/dls/h&sdocs.nsf/By+Year/SD92002/$file/
SD9_2002.pdf (last visited April 10, 2015).

subpoena duces tecum.  The circuit court issued an order enforcing the subpoena duces tecum and subsequently holding Yelp in civil contempt when it refused to comply.[3]  The Court of Appeals affirmed the circuit court's decision.  Yelp, Inc. v. Hadeed Carpet Cleaning, Inc., 62 Va. App. 678, 752 S.E.2d 554 (2014).

With specific regard to the exercise of subpoena power over Yelp, the circuit court and Court of Appeals ruled that service of the subpoena on Yelp's registered agent in Virginia provided the circuit court with jurisdiction to enforce the subpoena duces tecum.[4]  Id. at 709-10, 752 S.E.2d at 569.

## II.  ANALYSIS

Yelp contends that the Court of Appeals erred in holding that "a Virginia trial court may assert subpoena jurisdiction over a non-party California company, to produce documents

---

[3] Following the circuit court's order enforcing the subpoena duces tecum, Yelp informed Hadeed that in order to appeal the order and protect its users' rights, it would not comply with the Order.  Hadeed then moved to have Yelp held in contempt.  62 Va. App. at 687-88, 752 S.E.2d 558.

[4] Both the circuit court and Court of Appeals relied upon Code § 13.1-766(A), which states that "[t]he registered agent of a foreign corporation authorized to transact business in this Commonwealth shall be an agent of such corporation upon whom any process, notice, order or demand required or permitted by law to be served upon the corporation may be served," and Code § 8.01-301(1), which provides for service of process "on the registered agent of a foreign corporation which is authorized to do business in the Commonwealth."

4

located in California, just because the company has a registered agent in Virginia."[5]

In determining whether the circuit court was empowered to enforce the subpoena duces tecum against Yelp, we first observe that while the General Assembly has expressly provided for the exercise of personal jurisdiction over nonresident defendants under certain circumstances, it has not expressly provided for the exercise of subpoena power over nonresident non-parties. In particular, the General Assembly has provided for the exercise of personal jurisdiction over nonresident defendants, including foreign corporations, through enactment of the long-arm statute, Code § 8.01-328.1, and has provided a range of options for the manner in which nonresident defendants may be served when "exercise of personal jurisdiction is authorized by this chapter." Code § 8.01-329(A).[6] When personal jurisdiction is based upon the long-arm statute, "only a cause of action arising from acts enumerated in this section may be asserted

_____

[5] Yelp asserts additional assignments of error in connection with its contention that enforcement of the subpoena was inconsistent with the First Amendment to the Constitution. In light of our holding that the circuit court lacked the authority to enforce the subpoena duces tecum, we need not reach these assignments of error.

[6] The General Assembly has also recognized that "[a] court of this State may exercise jurisdiction on any other basis authorized by law." Code § 8.01-330.

5

against [the defendant]."  Code § 8.01-328.1(C).[7]  In contrast to the express provisions authorizing the exercise of personal jurisdiction over nonresident defendants and the manner of service of process on such nonresident defendants, the General Assembly has not expressly authorized the exercise of subpoena power over non-parties who do not reside in Virginia.[8]

Similarly, our Rules do not recognize the existence of subpoena power over nonresident non-parties.  Rule 4:9A sets forth the procedure for issuing a subpoena duces tecum to a non-party.  The subpoena duces tecum may be issued by the clerk

[7] The long-arm statute further provides that "nothing contained in this chapter shall limit, restrict or otherwise affect the jurisdiction of any court of this Commonwealth over foreign corporations which are subject to service of process pursuant to the provisions of any other statute." Code § 8.01-328.1(C).  In this regard, Code § 8.01-301 sets forth the most common modes of service upon a foreign corporation depending on whether the foreign corporation is authorized to transact business in Virginia and the basis for exercising jurisdiction over such corporation.

[8] The dissent contends that Code § 8.01-301 confers upon the circuit courts a general subpoena power extending beyond Virginia because the statute lists how process may be served on a foreign corporation.  However, there is a fundamental difference between the issuance of an enforceable subpoena and the manner by which a subpoena may be served.  See Bellis v. Commonwealth, 241 Va. 257, 261-62, 402 S.E.2d 211, 214 (1991).  Service by one of the modes prescribed by law does not make the subpoena served enforceable.  Service of process "cannot cure defects in the 'process' itself." Lifestar Response of Md., Inc. v. Vegosen, 267 Va. 720, 725, 594 S.E.2d 589, 591 (2004).  Thus, the General Assembly's authorization of a method of service does not make all process served by such a method lawful.

6

pursuant to Rule 4:9A(a)(1) or by an attorney pursuant to Rule 4:9A(a)(2). Rule 4:9A does not address the issuance of a subpoena duces tecum to persons who reside or have a principal place of business outside of Virginia. Likewise, Rule 4:9A does not address the issuance of a subpoena duces tecum for documents located outside of Virginia. Rule 4:9A also does not address service on the non-party of the subpoena duces tecum or service upon a nonresident or foreign corporation.[9]

The General Assembly's authorization of the exercise of personal jurisdiction over nonresident defendants does not confer upon Virginia courts subpoena power over nonresident non-parties. It is axiomatic that "[t]he underlying concepts of personal jurisdiction and subpoena power are entirely different." In re National Contract Poultry Growers' Ass'n,

---

[9] The Rule does provide that copies of the subpoena duces tecum must be served pursuant to Rule 1:12 upon counsel of record and parties having no counsel. Rule 4:9A(a)(1) and (2). In addition, Rule 4:1(f) provides, in pertinent part, "that any notice or document required or permitted to be served under this Part Four shall be served as provided in Rule 1:12." Rule 1:12 governs service of process after the initial process of "[a]ll pleadings, motions and other papers not required to be served otherwise and requests for subpoenas duces tecum" and provides for service "by delivering, dispatching by commercial delivery service, transmitting by facsimile, delivering by electronic mail when Rule 1:17 so provides or when consented to in writing signed by the person to be served, or by mailing, a copy to each counsel of record on or before the day of filing." (Emphasis added.)

7

771 So.2d 466, 469 (Ala. 2000). "Personal jurisdiction is based on conduct that subjects the nonresident to the power of the [state] courts to adjudicate its rights and obligations in a legal dispute." Id. "By contrast, the subpoena power of [a state] court over an individual or a corporation that is not a party to a lawsuit is based on the power and authority of the court to compel the attendance of a person at a deposition, or the production of documents by a person or entity." Id.; Phillips Petroleum Co. v. OKC Ltd. Partnership, 634 So.2d 1186, 1187 (La. 1994) ("The concepts, and/or underlying purposes, of personal jurisdiction and subpoena power are simply different.").

Therefore, the power to compel a nonresident non-party to produce documents in Virginia or appear and give testimony in Virginia is not based on consideration of whether the nonresident non-party would be subject to the personal jurisdiction of a Virginia court if named as a defendant in a hypothetical lawsuit.[10] See, e.g., In re National Contract Poultry Growers' Ass'n, 771 So.2d at 469 ("The fact that NCPGA may have sufficient contacts with the State of Alabama to

_____

[10] While the exercise of subpoena power over nonresident non-parties may certainly raise Due Process considerations, the issue before us on appeal is whether the circuit court had authority to exercise subpoena power in the first instance.

8

subject it to the jurisdiction of the Alabama courts under the Alabama long-arm personal-jurisdiction provisions is irrelevant to the question [of whether it is required to respond to a subpoena in a lawsuit in which it is not a party]."); Colorado Mills, LLC v. SunOpta Grains & Foods Inc., 269 P.3d 731, 734 (Colo. 2012) (There is no "authority applying our long-arm statute, or the long-arm statute of any other state for that matter, to enforce a civil subpoena against an out-of-state nonparty."); Ulloa v. CMI, Inc., 133 So.3d 914, 920 (Fla. 2013) ("The long-arm statute does not extend the subpoena power of a Florida court to command the in-state attendance of a non-resident, non-party person or entity, or compel that person or entity to produce documents."); Phillips Petroleum Co., 634 So.2d at 1188 ("Whereas the long-arm statute extends Louisiana's personal jurisdiction over persons or legal entities beyond Louisiana's borders, there is no similar authority for extending the subpoena power of a Louisiana court beyond state lines to command in-state attendance of nonresident nonparty witnesses."); Syngenta Crop Prot., Inc. v. Monsanto Co., 908 So.2d 121 (Miss. 2005) ("[A] Mississippi court cannot subpoena a nonresident nonparty to appear and/or produce in Mississippi documents which are located outside the State of Mississippi, even if that nonresident nonparty is subject in another context to the personal jurisdiction of the

9

court."); <u>Craft v. Chopra</u>, 907 P.2d 1109, 1111 (Okla. Ct. App. 1995) (<u>rejecting</u> the assertion that "discovery of documents from non-resident non-parties by subpoena issued in the State of Oklahoma" is permitted "so long as the non-resident has sufficient due process 'minimum contacts' with the State of Oklahoma").[11]

Thus, enforcement of a subpoena seeking out-of-state discovery is generally governed by the courts and the law of the state in which the witness resides or where the documents are located. <u>See, e.g.</u>, <u>In re National Contract Poultry Growers' Ass'n</u>, 771 So.2d at 469 (where documents located in foreign jurisdiction are sought from non-party foreign corporation, subpoena must issue from foreign jurisdiction and be served in accordance with law of foreign jurisdiction); <u>Colorado Mills, LLC</u>, 269 P.3d at 734 ("enforcing civil subpoenas against out-of-state nonparties is left to the state

---

[11] This principle holds true even in states where the designation by a foreign corporation of a registered agent for service of process is deemed to confer personal jurisdiction upon the state court. <u>See, e.g.</u>, <u>Ulloa v. CMI, Inc.</u>, 133 So.3d at 920 ("[d]esignating an agent for service of process subjects a foreign corporation to the jurisdiction of the Florida court to adjudicate its rights and obligations in a legal dispute," but it does not confer subpoena power beyond state lines); <u>Phillips Petroleum Co.</u>, 634 So.2d at 1188 (although "[a] principal consequence of designating an agent for service of process is to subject the foreign corporation to jurisdiction in a Louisiana court," it does not subject the corporation to the subpoena power of the court).

10

in which the discovery is sought").  In recognition of the territorial limits of subpoena power, most states have adopted some form of the Uniform Interstate Depositions and Discovery Act ("UIDDA"), which sets forth procedures for litigants to pursue out-of-state discovery.[12]

The Virginia General Assembly enacted the UIDDA, Code §§ 8.01-412.8 et seq., in 2009.  The Act provides reciprocal mechanisms by which discovery of persons and documents in Virginia may be obtained in connection with actions pending in a foreign jurisdiction through presentment of a subpoena issued by the foreign jurisdiction.[13]  "In applying and construing this uniform act, consideration shall be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it."  Code § 8.01-412.14.  Thus,

---

[12] See Uniform Law Commission, Uniform Interstate Depositions and Discovery Act, Legislative Enactment Map, http://www.uniformlaws.org/Act.aspx?title=Interstate Depositions and Discovery Act (last visited March 9, 2015).

[13] Pursuant to Code § 8.01-412.10, a party seeking to conduct discovery in Virginia in aid of a lawsuit pending in another jurisdiction "shall submit to the clerk of court in the circuit in which discovery is sought to be conducted in the Commonwealth (i) a foreign subpoena and (ii) a written statement that the law of the foreign jurisdiction grants reciprocal privileges to citizens of the Commonwealth for taking discovery in the jurisdiction that issued the foreign subpoena."

11

> [t]he privilege extended to persons in other states for discovery under this article shall only apply if the jurisdiction where the action is pending has extended a similar privilege to persons in the Commonwealth, by that jurisdiction's enactment of the Uniform Interstate Depositions and Discovery Act, a predecessor uniform act, or another comparable law or rule of court providing substantially similar mechanisms for use by out-of-state parties.

Id.

The UIDDA, as enacted in Virginia, is the successor to the Uniform Foreign Depositions Act ("UFDA"), "rooted in principles of comity and provides a mechanism for discovery of evidence in aid of actions pending in foreign jurisdictions." America Online, Inc. v. Anonymous Pub. Traded Co., 261 Va. 350, 360, 542 S.E.2d 377, 382 (2001) (applying UFDA). Comity "is a matter of favor or courtesy, based on justice and good will. It is permitted from mutual interest and convenience, from a sense of the inconvenience which would otherwise result, and from moral necessity to do justice in order that justice may be done in return." Id. at 361, 542 S.E.2d at 383; see also America Online, Inc. v. Nam Tai Elec., Inc., 264 Va. 583, 591, 571 S.E.2d 128, 132 (2002) (applying UFDA).

In determining the scope of subpoena power over nonresident non-parties, it is important to consider the policy underlying the General Assembly's enactment of the UIDDA. The UIDDA provides a reciprocal and fair process that assists out-

12

of-state litigants seeking discovery from non-parties and seeks to "promote uniformity of the law with respect to its subject matter among the states that enact it."  Code § 8.01-412.14. The UIDDA affords protection to Virginia citizens subject to a subpoena from another state by providing for enforcement of the subpoena in Virginia.  In turn, the UIDDA contemplates that Virginia courts will respect the territorial limitations of their own subpoena power.  Such respect furthers the preservation of comity and uniformity among the states, which ultimately benefits Virginia citizens.[14]

The language of the statute also manifests the intent of the General Assembly to respect the territorial limitations of out-of-state discovery.  Under the UIDDA, the place where "discovery is sought to be conducted" determines which circuit court issues and enforces a subpoena.  See Code §§ 8.01-412.10 and -412.13.  The location of discovery also determines which jurisdiction's law governs a non-party's discovery obligations. See § 8.01-412.12.  This language indicates the General

---

[14] Consistent with this policy, Rule 4:5(a1)(iii), which governs depositions taken in another state, requires enforcement matters to be pursued "by process issued and served in accordance with the law of the jurisdiction where the deposition is taken."

Assembly has not created two mechanisms for obtaining discovery from a non-party residing outside of Virginia.[15]

In sum, we conclude that the circuit court was not empowered to enforce the non-party subpoena duces tecum directing Yelp to produce documents located in California in connection with Hadeed's underlying defamation action against the John Doe defendants in the Virginia circuit court. The information sought by Hadeed is stored by Yelp in the usual course of its business on administrative databases within the custody or control of only specified Yelp employees located in San Francisco, and thus, beyond the reach of the circuit court.[16] Our holding is consistent with the traditional limits

---

[15] If the UIDDA provided additional authority for Virginia courts to exercise subpoena power over nonresidents, this could subject non-parties to greater discovery than litigants. A Virginia subpoena that was quashed or limited could be "re-litigated" under another jurisdiction's law by resorting to the UIDDA. See, e.g. Cal. Civ. Pro. Code 2029.600(a).

[16] The dissent argues that Yelp has not proved that user operations team members are the only Yelp employees with access to the database, or that all other employees with access, if any, are only in San Francisco. This argument misses the point. Regardless of the number of employees who have access to the data comprising information that would identify Yelp users, such data is maintained in the regular course of Yelp's business by employees in California. For this reason, we cannot accept the dissent's position that the concept of out-of-state discovery is outdated in this "digital era" in which data is more easily accessed and disseminated in electronic form. Even data that is maintained in a tangible form can be, and has long been, subject to reproduction and dissemination. Yet, corporate data, in any form, is necessarily created and

14

on subpoena power of state courts and the public policy established by the General Assembly through enactment of the UIDDA.[17]  Although the General Assembly has expressly authorized Virginia courts to exercise personal jurisdiction over nonresident parties, it has not expressly authorized Virginia courts to compel nonresident non-parties to produce documents located outside of Virginia.  Because the underlying concepts of personal jurisdiction and subpoena power are not the same, the question of whether Yelp would be subject to personal jurisdiction by Virginia courts as a party defendant is irrelevant.[18]  Therefore, subpoena power was not conferred upon

---

maintained in the regular course of a corporation's business by designated corporate employees who are located at a place that is either within Virginia or out-of-state.

[17] Thus, our holding does not mean that a Virginia court could not compel in-state discovery from a non-party foreign corporation that maintains an office in Virginia.  This case presents the issue of a Virginia court's power to compel out-of-state discovery from a non-party foreign corporation.

[18] The dissent proposes to subject nonresidents to the jurisdiction of Virginia courts even though they have not been sued in our courts by extending subpoena power to the limits of personal jurisdiction using the minimum contacts analysis. However, the minimum contacts analysis is premised upon the existence of actual litigation against a nonresident defendant. "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)(emphasis added) (internal quotation marks and citations omitted).

15

the circuit court by Yelp's act in registering to conduct business in Virginia or designating a registered agent for service of process in the Commonwealth.

## III. CONCLUSION

For the foregoing reasons, we will vacate the judgment of the Court of Appeals, vacate the contempt order of the circuit court, and remand for further proceedings consistent with this opinion.[19]

<u>Reversed and remanded.</u>

JUSTICE MIMS, with whom JUSTICE MILLETTE joins, concurring in part and dissenting in part.

The majority opinion holds that the General Assembly has not provided for the exercise of "subpoena power" over non-

---

The dissent also assumes an "out-of-state bank" with a "pervasive presence" in Virginia would be subject to general personal jurisdiction in our courts.  However, general personal jurisdiction over a foreign corporation exists only if it is at "home" in the forum state.  <u>Daimler AG v. Bauman</u>, 134 S.Ct. 746, 760-62 (2014).  A corporation is not "at home" in "every state in which [it] 'engages in a substantial, continuous, and systematic course of business.'"  <u>Id</u>. at 760-61. It would be an "exceptional case" that "a corporation's operations in a forum other than its formal place of incorporation or principal place of business [are] so substantial and of such a nature as to render the corporation at home in that State."  <u>Id</u>. at 761 n.19.

[19] We will not quash the subpoena duces tecum since Hadeed may choose to seek enforcement of the subpoena duces tecum through the versions of the UIDDA enacted in California, Cal. Civ. Proc. Code §§ 2029.100 et seq.  See also, Delaware, Del. Code Ann. Tit. 10, § 4311.

16

resident non-parties. Because the relevant statutory text is clear, I disagree.

The General Assembly has said that a subpoena duces tecum is "process." Code § 1-237 (defining "process" to include a subpoena); Code § 8.01-2(8) (defining "subpoena" to include a subpoena duces tecum for the purposes of Title 8.01). It has said that "[u]pon commencement of an action, process shall be served in the manner set forth in" Chapter 8 of Title 8.01. Code § 8.01-287. Chapter 8 of Title 8.01 includes Code § 8.01-301. In Code § 8.01-301(1), the General Assembly provides that a foreign corporation may be served with process through its Virginia registered agent. Nothing in the Code restricts service of process if the foreign corporation is a non-party or redefines process to exclude subpoenas or subpoenas duces tecum if the foreign corporation is a non-party. Finally, the General Assembly has said that Virginia courts may use their contempt power to punish any person who disobeys lawful process. Code § 18.2-456(5).

Thus, the General Assembly has provided for the exercise of subpoena power over a non-resident non-party, where that non-resident non-party is a foreign corporation with a Virginia resident agent (as Yelp is in this case). The majority opinion

17

overlooks the clear statutory language.[1]  As far as the General

Assembly is concerned, if a foreign corporation can be lawfully

served with process in Virginia, Virginia courts can compel it

to respond to discovery here.  However, for reasons I discuss

below, state statutes are not the last word on this subject.

Rather, the Due Process Clause of the Fourteenth Amendment

narrows the broad authority the General Assembly has given

Virginia courts.

But before undertaking the constitutional analysis, some

important observations are in order.  First, in its statement

of facts, the majority opinion says that Yelp stores IP

addresses in administrative databases accessible only by

specified Yelp employees located in San Francisco.  No evidence

supports this statement.  Rather, through an affidavit by its

Associate Director of User Operations, Yelp says only that the

---

[1] In footnote 8, the majority opinion correctly observes that valid service cannot make unlawful process lawful. However, the majority opinion does not explain why the process at issue in this case is unlawful.  Cf. Lifestar Response of Md., Inc. v. Vegosen, 267 Va. 720, 724, 594 S.E.2d 589, 591 (2004) (holding that the amended motion for judgment validly served on the defendant was not lawful process because it did not include the notice required by Rule 3:3(c)).

Hadeed's subpoena duces tecum is authorized by Code § 8.01-407.1.  Nothing in that statute, or any other, says that it does not apply to non-resident non-parties.  Accordingly, it appears that under the majority opinion, the "lawfulness" of process appears to turn not on whether its form and substance is authorized by law but on the status of the entity upon whom it is served.

user operations team has access to the database, and the user operations team is in San Francisco.  This does not establish that user operations team members are the only Yelp employees with access to the database, or that all other employees with access, if any, are only in San Francisco.[2]

This misstatement of the evidence is compounded by footnote 17, in which the majority opinion states that the Court's holding does not mean that Virginia courts cannot compel production in Virginia by a non-party foreign corporation that (unlike Yelp) has an office in Virginia.  The implication of this footnote is that if the record at issue is located in Virginia, Virginia courts can compel the non-party foreign corporation to produce it here.  Yet the majority opinion's conclusion makes that impossible.  If the General Assembly has not provided for the exercise of subpoena power over a non-resident non-party (as the majority opinion says), how can Virginia courts acquire this authority based solely on

---

[2] In footnote 1, the majority opinion correctly notes that, according to the affidavit, user operations team members have specialized access to the database and only they respond to subpoenas seeking that information.  However, this statement does not support the majority opinion's extrapolation that only those employees have access to the database.

Despite the majority opinion's characterization in footnote 16, the issue is not whether Yelp proved that only employees in California have access to the database.  Rather, the issue is that the majority opinion states as a fact that only employees in California do, when that proposition is not supported by the record.

the location of the record being sought?  The majority opinion, which is based solely upon an interpretation of what the General Assembly has authorized, cites no statute for this proposition.

Further, to base the courts' power to compel production on the geographic location of a record is simply incompatible with the digital era.  The majority opinion appears to presume that records are still printed on paper as documents and stored in filing cabinets in a file room, where they can be seen and touched.  This practice is waning in modern interstate commerce and soon only nostalgic vestiges will remain, the lingering artifacts of an earlier age.  Now, records are more commonly intangible and incorporeal, stored electronically in binary form.  Where are such records located?  Only on the device where the information is created?  On any device where a copy can be found?  On any device that can access it remotely?  Under the majority opinion, the answers to these questions will determine whether the General Assembly has authorized Virginia courts to exercise subpoena power.  And the questions cannot be answered in the abstract.  Circuit courts throughout the Commonwealth will be forced to grapple with them often.

To illustrate the practical difficulty the majority opinion needlessly creates, one can consider a hypothetical case where an employer sues a former employee to recover funds

he embezzled by falsely endorsing a customer's check and depositing it in his personal account. The check is both drawn on and deposited into accounts at a national bank incorporated in Delaware with its principal place of business in North Carolina. The bank has a registered agent, hundreds of branches, and thousands of employees in Virginia. The employer serves a subpoena duces tecum on the bank's Virginia registered agent, seeking production of the check. The bank routinely scans all paid and deposited checks, stores the images electronically on a server located at its principal office in North Carolina, and destroys the physical check.

According to the majority opinion, whether the General Assembly has authorized Virginia courts to compel this out-of-state bank, a non-party foreign corporation but with pervasive presence in and contacts with Virginia, to produce its electronic record depends on where the record is located. That cannot be the case, but it is the effect of the majority opinion's analysis.[3, 4]

---

[3] Incidentally, if an attorney wants to issue a subpoena to such a foreign corporation, how can he or she do so without first knowing where the record is located? Issuing such a subpoena without sufficient knowledge that it is located in Virginia would be sanctionable under Code § 8.01-271.1.

[4] Contrary to the majority opinion's assertion in footnote 18, this dissent does not assume that Virginia would have personal jurisdiction over the hypothetical bank. Rather, whether a Virginia court can compel the bank to produce the record depends on whether the bank has constitutionally

21

Second, the majority opinion states that the General Assembly has not authorized courts to exercise subpoena power over a non-resident non-party in the long-arm statute, Code § 8.01-328.1.  However, the long-arm statute is irrelevant.  It neither confers nor constrains the power at issue here.  As noted above, the authority is provided by Code §§ 1-237, 8.01-2(8), 8.01-287, 8.01-301, and 18.2-456(5).

To the contrary, the long-arm statute expressly provides that "nothing contained in this chapter shall limit, restrict or otherwise affect the jurisdiction of any court of this Commonwealth over foreign corporations which are subject to service of process pursuant to the provisions of any other statute."  Code § 8.01-328.1(C).  Foreign corporations with Virginia registered agents are subject to service of process under Code § 8.01-301(1).  The long-arm statute therefore does not deny Virginia courts jurisdiction over them, whether they are parties or not.  This is consistent with our previous holdings that by enacting the long-arm statute, the General Assembly intended to confer as much jurisdiction upon Virginia courts as constitutional due process allows.  E.g., Peninsula Cruise, Inc. v. New River Yacht Sales, Inc., 257 Va. 315, 319,

sufficient contacts with Virginia, not whether the record is located here.

22

512 S.E.2d 560, 562 (1999); John G. Kolbe, Inc. v. Chromodern Chair Co., 211 Va. 736, 740, 180 S.E.2d 664, 667 (1971).

Third, the majority opinion refers to the legislature's enactment of the Uniform Interstate Depositions and Discovery Act, Code §§ 8.01-412.8 to -412.15, as further support for its conclusion that the General Assembly has not authorized Virginia courts to exercise subpoena power over non-resident non-parties. However, that Act only provides Virginia courts with additional authority.[5] Nothing in it subtracts from the statutory authority the General Assembly has already provided Virginia courts in Code §§ 1-237, 8.01-2(8), 8.01-287, 8.01-301, and 18.2-456(5). Consequently, Virginia courts had authority to compel production by a non-party foreign corporation prior to the Act's enactment, and that authority remains.

Fourth, the majority opinion cites several decisions by appellate courts in other states finding that trial courts in those states could not enforce a subpoena against a non-resident non-party. However, those decisions are not relevant in this case because they are interpretations holding that the applicable state law did not provide those states' courts with

_____

[5] Specifically, the Act supplies Virginia courts the statutory authority to compel a Virginia resident to produce information relevant to litigation pending in another state's courts. The Act has no effect on Virginia courts' authority over non-residents.

the broad authority the General Assembly has provided Virginia courts in Code §§ 1-237, 8.01-2(8), 8.01-287, 8.01-301, and 18.2-456(5).

The majority opinion relies principally on In re National Contract Poultry Growers' Ass'n, 771 So.2d 466 (Ala. 2000). That Alabama case involved a non-party corporation incorporated in Arkansas. Its principal place of business was in Louisiana and it did not have an Alabama registered agent. A party obtained a subpoena against the corporation and served it by certified mail at its Louisiana office. The corporation did not respond to the subpoena and the trial court thereafter found it in contempt. Id. at 466-67. On appeal, the Supreme Court of Alabama reversed. Id. at 470. It determined that an Alabama statute and the Alabama Rules of Civil Procedure permitted a subpoena to be "served at any place within the state." 771 So.2d at 468-69 (quoting Ala. R. Civ. P. 45(b)(2)). Because the subpoena was served by certified mail in Louisiana, the subpoena was not served on the corporation within the state as Alabama law required. Id. at 469-70.

Similarly, Craft v. Chopra, 907 P.2d 1109 (Okla. Civ. App. 1995), involved a plaintiff suing a doctor in Oklahoma, alleging that he sexually abused her while she was under anesthesia. She obtained a subpoena against a Texas hospital for letters of recommendation pertaining to the doctor's

24

privileges there.  There is no indication of whether the hospital had a registered agent in Oklahoma.  Rather, the subpoena was served on it by certified mail in Texas.  When the hospital resisted the subpoena, the trial court refused to enforce it and awarded the hospital damages.  Id. at 1110-11.  On appeal, the Oklahoma Court of Civil Appeals affirmed.  It determined that under the Oklahoma statute, subpoenas could be served only within the state.  Id. (construing former Okla. Stat. tit. 12, § 2004.1(A)(1)(c)).

These cases are irrelevant here because Yelp was served in Virginia according to Virginia law.  Code § 8.01-301(1).

Another case cited in the majority opinion, Syngenta Crop Prot., Inc. v. Monsanto Co., 908 So.2d 121 (Miss. 2005), involved three non-party corporations.  All three were incorporated in Delaware.  One had its principal place of business in North Carolina, another in Minnesota, and the last in Indiana.  All had Mississippi registered agents.  Id. at 124.  The Supreme Court of Mississippi ruled that a state statute permitted service of process on foreign corporations by registered or certified mail but that a rule of court required subpoenas to be served personally.  Id. at 127-28 (construing Miss. Code Ann. § 79-4-15.10 and Miss. R. Civ. P. 45(c)(1)).  Reconciling these conflicting provisions of Mississippi law, the court determined that subpoenas were not process and

25

therefore could not be served on a foreign corporation through its registered agent.  Id.

This case is not relevant here because a subpoena is process under Virginia law and can be served on a foreign corporation through its Virginia registered agent.  Code §§ 1-237 and 8.01-301(1).

Other cases cited in the majority opinion are also irrelevant.  Ulloa v. CMI, Inc., 133 So.3d 914 (Fla. 2013) involved criminal defendants charged with driving under the influence who sought technical data from the corporation that manufactured breathalyzer equipment.  The corporation was incorporated in Kentucky.  There is no indication of where it had its principal place of business, but it had a Florida registered agent.  Id. at 915.  The Supreme Court of Florida determined that the applicable Florida statute provided that subpoenas in criminal cases ran only within the state.  Id. at 920-21 (construing Fla. Stat. § 914.001(1)).

Similarly, Phillips Petroleum Co. v. OKC Ltd. P'ship, 634 So.2d 1186 (La. 1994), involved a non-party corporation incorporated in Texas.  Its principal place of business was in Texas, but it had a Louisiana registered agent.  Id. at 1187.  The Supreme Court of Louisiana determined that the applicable Louisiana statute simply did not "provide for the subpoena of a

nonresident witness." Id. at 1188 n.3 (construing La. Code Civ. Proc. Ann. art. 1352).

These cases are not relevant here because Virginia law does provide for the subpoena of a non-resident non-party, if that non-party is a foreign corporation with a Virginia registered agent that can be served with process.

Each of these opinions also includes language (recited in the majority opinion in this case) rejecting the claims made by the parties seeking discovery that the subpoenas should be enforced because the courts could exercise personal jurisdiction over the foreign corporations. I agree with the majority opinion and these out-of-state cases that having personal jurisdiction over a non-resident non-party is not enough to allow a court to enforce a subpoena; there must also be statutory authority enabling a court to exercise that jurisdiction by enforcing a subpoena. Where I part with the majority opinion is its conclusion that the General Assembly has not provided that authority here, under Virginia law.

These flaws in the majority opinion are significant and problematic. Nevertheless, it reaches the correct conclusion that the circuit court cannot enforce Hadeed's subpoena duces tecum in this case. However, the reasons are constitutional rather than statutory. Specifically, a state court's coercive judicial power is limited by the Due Process Clause of the

27

Fourteenth Amendment.  J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S., ___, ___, 131 S.Ct. 2780, 2786-87 (2011).  This extends to enforcement of subpoenas and subpoenas duces tecum.  Eli Lilly & Co. v. Gottstein, 617 F.3d 186, 192 & n.4 (2d Cir. 2010) (collecting cases); see also United States Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 76 (1988) ("[T]he subpoena power of a court cannot be more extensive than its jurisdiction.").

Hadeed argues that Virginia courts may constitutionally exercise personal jurisdiction over Yelp because it has a Virginia registered agent and therefore has consented to being subject to jurisdiction here.  There is historical authority supporting the proposition that a foreign corporation consents to be sued in a state when it appoints an agent for the receipt of process there.  E.g., Railroad Co. v. Harris, 79 U.S. 65, 81 (1871); Pennoyer v. Neff, 95 U.S. 714, 735 (1878); Ex parte Schollenberger, 96 U.S. 369 (1878); Pennsylvania Fire Ins. Co. v. Gold Issue Mining & Milling Co., 243 U.S. 93, 95-96 (1917).

However, to the extent that these cases are applicable to a non-party foreign corporation at all, I believe they have been supplanted by the contacts-based theory of personal jurisdiction articulated in International Shoe Co. v. Washington, 326 U.S. 310 (1945).  Shaffer v. Heitner, 433 U.S. 186, 212 (1977) ("[A]ll assertions of state-court jurisdiction

28

must be evaluated according to the standards set forth in International Shoe and its progeny.")  Contacts-based jurisdiction comes in two forms, general and specific.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n.15 (1985).  The party claiming that a court may exercise jurisdiction bears the burden of showing a prima facie case for that claim.  ESAB Group, Inc. v. Zurich Ins. PLC, 685 F.3d 376, 391 (4th Cir. 2012).

To be subject to general jurisdiction, a foreign corporation must have "'continuous corporate operations within a state . . . so substantial and of such a nature as to justify suit on causes of action arising from dealings entirely distinct from'" the activities it purposefully directs there.  Daimler AG v. Bauman, 571 U.S. ___, ___, 134 S.Ct. 746, 761 (2014) (quoting International Shoe, 326 U.S. at 318) (alteration and emphasis omitted).  A corporation has such operations in the states where it is incorporated and where it has its principal place of business.  Id. at 760.  A corporation may also be subject to general jurisdiction in other states, provided that the corporation's operations there are "'so continuous and systematic as to render [it] essentially at home'" there.  Id. at 761 & n.19 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. ___,

___, 131 S.Ct. 2846, 2851 (2011) (internal quotation marks omitted)).

Yelp is incorporated in Delaware. Its principal place of business is in California. Hadeed has neither alleged nor shown that Yelp has any corporate operations within the Commonwealth, much less operations that are sufficiently "continuous and systematic," for the purposes of the Goodyear Dunlop test. Accordingly, I cannot conclude on this record that Virginia courts may exercise general jurisdiction over Yelp.

Specific jurisdiction assesses whether a foreign corporation has sufficient contacts with a state for its courts to constitutionally exercise jurisdiction over the corporation based on its activity there. Burger King, 471 U.S. at 472. Further, the foreign corporation's activities must be "purposefully directed" at that state. Id. Activity is purposefully directed at a state if it is "such that [the corporation] should reasonably anticipate being haled into court there." Id. at 474. "[R]andom, fortuitous, or attenuated" activity or "the unilateral activity of another party or a third person" is insufficient. Id. at 475 (internal quotation marks and citations omitted).

The limited record in this case does not establish that Yelp has sufficient contacts with the Commonwealth or that it

30

has purposefully directed activities here such that Virginia courts may exercise specific jurisdiction over it. Neither the complaint nor the materials Hadeed submitted in support of the subpoena duces tecum alleges any such contacts or purposeful direction; rather, each merely states that Yelp operates a website with approximately 54 million unique visitors per year.

Hadeed has not shown whether Yelp has paid subscribers or how many of them reside in Virginia. It has not shown how many Virginians view or contribute to Yelp's website, or that merely viewing or contributing to the website would amount to more than "the unilateral activity of . . . a third person," which is insufficient to confer specific jurisdiction. Burger King, 471 U.S. at 475. It has not shown whether Yelp solicits advertising from Virginia businesses or that it has any contracts with Virginia residents. Accordingly, the record does not include evidence from which I can conclude that Yelp has sufficient contacts with or has purposefully directed activity into Virginia so that courts here may constitutionally exercise specific jurisdiction over it.[6]

------

[6] Hadeed also argues that under Code § 8.01-277.1, Yelp waived any objection to jurisdiction because it failed to make a special appearance. Hadeed contends that Yelp's written objections to the subpoena duces tecum are not a motion to quash, so they did not preserve a jurisdictional argument under Code § 8.01-277(A). I disagree.

Yelp has done none of the things listed as examples of "conduct related to adjudicating the merits of the case" in

For these reasons, I must respectfully dissent from the majority opinion's determination that the circuit court lacked statutory authority to enforce the subpoena duces tecum against Yelp. However, I conclude that the evidence was insufficient to establish that the court could exercise personal jurisdiction over Yelp within the limits of Fourteenth Amendment due process. I therefore concur in the judgment vacating both the judgment of the Court of Appeals and the contempt order of the circuit court.

---

Code § 8.01-277.1(A). The merits of this case involve whether the defendants defamed Hadeed and conspired against it in violation of Code § 18.2-500, as alleged in the complaint. Yelp's participation in the proceedings is not related to the adjudication of those claims. All Yelp has done is resist the enforcement of Hadeed's subpoena duces tecum in the manner expressly provided by Code § 8.01-407.1(A)(4), which includes the filing of written objections. Unlike conducting discovery, resisting discovery is not one of the means by which jurisdictional objections may be waived under Code § 8.01-277.1.